NEW YORK COUNTY.—HON. D. C. CALVIN, SURROGATE.—
November, 1880.

## BURNETT *v.* NOBLE.

*In the matter of the estate of* MARGARET CURR, *deceased.*

The testatrix, during her life-time, having a small income, was dependent for assistance, in the management of her business, upon one afterwards her executor, who had charge of her affairs, and collected her interest and dividends, etc., for more than fourteen years prior to her death. He was under no legal or moral obligations to render her gratuitous services, but never asked or received compensation. She often expressed gratitude to him and gave him certain articles of small value. Upon his accounting as executor, he claimed payment for such services.

*Held,* 1. That the facts proved an implied contract on the part of decedent, to pay what the services were reasonably worth.

2. That the law implied an employment from year to year, and interest ran from the end of each year.

3. That so much of the claim as was based on services rendered before the commencement of six years prior to the death of testatrix, was barred by the statute of limitations.

4. That testimony of the executor, with reference to transactions and communications with decedent, and what he did, as tending to show an *implied* agreement to pay for his services, was incompetent under Code Civ. Pro., § 829.

The purpose of that section is to prevent the establishment of claims against estates by the testimony of persons interested in the establishment, when the mouth of the alleged obligor is sealed in death.

An executor has no right to waive the defense of the statute of limitations to the claim of another against the estate; and the payment of a claim barred thereby cannot be credited to him on the accounting.

A proceeding in the surrogate's court, to establish an executor's claim against the estate, is analogous to the commencement of an action therefor; and the same defenses, including the statute of limitations, may be interposed, as in an action.

The immunity of the estate from a claim barred by that statute should be more rigidly enforced where the representative holds the claim than in other cases. There being no such thing as the presentation and admission or dispute of a claim made against an estate by its representative, there can be no revival of such a claim when barred.

The testatrix, by her will, directed her executor to erect a suitable monument over the graves of herself and husband, and left the selection of the style of such monument, and the expense thereof, entirely discretionary with him. The executor asked, upon the accounting, to be allowed the sum of $700 for such purpose. The amount of the personal estate, for distribution, was less than $2,000. *Held,* that no greater sum than $250 should be allowed.

MOTION to confirm referee's report on accounting of the executor of the will of decedent.

Exceptions to the report were filed on behalf of the executor and of the contestant, as follows:

The executor filed exceptions, among others, (1) to the disallowance of an item of $10, for services rendered in removing furniture for decedent in the year 1865. The claim being barred by the statute of limitations,

before the death of decedent, the auditor found, as matter of law, that the executor could not by his admissions revive it. (2) To the disallowance of so much of his claim against the estate, as was founded upon services rendered prior to December 1, 1871; also to the disallowance of interest upon the several annual amounts allowed by the auditor. In relation to which, the auditor reported that "so much of the claim of the executor as is founded upon services rendered prior to December 21, 1871, is barred by the statute of limitations and should not be allowed. A fair and liberal allowance to the executor, for his services rendered for the six years previous to the testatrix's death, is a proportionate amount of his claim, viz., $151.20, which amount is allowed." (4) To a number of the rulings of the auditor, in respect to the evidence.

The contestant, Janet Burnett, excepted to the allowance to the executor of any sum on account of services rendered previous to the death of decedent.

The executor asked to be allowed the sum of $700 for the erection of a monument over the grave of decedent, which amount the contestant considered too large, in view of the size of the estate.

In respect to the monument, the will directed the executor "to finish and have made and placed over the graves of myself and husband, in the Evergreens Cemetery, a suitable monument, of a pattern and kind which he may approve of. And I trust to his discretion in the matter, as he understands my wishes."

As to the claim of the executor against the estate, the auditor reported:

"The contestant objects to the claim of the executor

for $350 for balance due him for services rendered from July 18, 1863, to December 21, 1877, a period of fourteen years and five months. It appears from the evidence that during that time Mr. Noble had charge of Mrs. Curr's affairs, held a power of attorney, collected her interest and dividends, sold her stock, and in fact took care of all her interests, and did everything she required; no one else was employed; Mr. Noble and his family were the only ones called upon for assistance. Mrs. Curr appreciated the services rendered by Mr. Noble, and often said she would not know what to do without him; that she was alone in the world, and that she knew she was a great trouble to Mr. Noble, and hoped some day to be able to pay him. It does not appear she ever paid him any money for his services, though from time to time she gave him numerous articles of small value, which had probably belonged to her husband. The total value, however, of these articles, would not exceed $15. Mr. Noble gives Mrs. Curr credit for these articles, and claims there is a balance due him amounting to $350.

"The services rendered were valuable and necessary to Mrs. Curr. The services were rendered at Mrs. Curr's request, and were accepted by her. There is no evidence from which I can infer that Mr. Noble agreed to render the services gratuitously, or that he did not expect compensation. He never asked her to *pay* him, but Mr. Noble knew that her income was very small, and that she could not afford to pay him. It was natural for Mr. Noble, under the circumstances, to expect to be paid out of the principal of Mrs. Curr's estate after her death. Mr. Noble was under no legal or moral

obligation to render gratuitous services to Mrs. Curr, which fact she appears to have recognized, and, as before remarked, frequently acknowledged her obligations to Mr. Noble, and expressed a desire and willingness to pay him. I think that from all the facts and circumstances, a contract and promise to pay should be implied. The claim averages about $25 per year."

The auditor concluded as to the claim, that the hiring of Mr. Noble was from year to year; that the statute of limitations began to run as to each year's services, at the end of the year; and that so much of it as was founded upon services rendered prior to December 21, 1871, was barred by the statute of limitations.

THE SURROGATE.—The first and second exceptions, so far as they raise the question of statutory bar, should be overruled, for the more recent authorities, in this State, at least, hold that the statute of limitations is a complete bar, which the executor has no right to waive; that it is his duty to interpose the statute as a defense; and that the payment of a barred claim cannot be credited to him, on his accounting (Bloodgood v. Bruen, 8 N. Y., 362; Bucklin v. Chapin, 1 Lans., 443).

In McLaren v. McMartin (36 N. Y., 88), it was held, that the mere fact of a partial payment by an executor or administrator, on a demand already barred at the death of the testator or intestate, is not sufficient to revive the demand against his estate.

There seems to be no doubt as to the duty of a representative of an estate to interpose the defense of the statute of limitations against any claim barred thereby; and the next question for consideration is, whether that

statute can be invoked in behalf of persons interested in the estate, against a claim thus barred, in favor of an executor or administrator.

There seems to be no good reason for a different rule in respect to such a claim. Indeed, it would seem to require the enforcement of the immunity of the estate more rigidly than in the case of an ordinary claim, because in the latter the representative of the estate has no personal interest in neglecting its protection, while in the former, his interest is adverse to any scrutiny of the claim, or defense thereto.

In Warren v. Paff (4 Brad., 260), the learned Surrogate held that the statute of limitations might be interposed by the executor, or by any party interested in the fund realized on the sale of real estate by the executor, notwithstanding a decree on final accounting wherein the claims of creditors had been liquidated.

In Rogers v. Rogers (3 Wend., 503), it was held that a debt barred by the statute of limitations in the lifetime of the testator, was presumed to have been paid, and was, therefore, not a legal demand or just debt ; and that an executor had no right to retain for such a demand, due to him personally, notwithstanding the will provided for the payment of all just debts. There is no such thing as the presentation and admission, approval or dispute of a claim against an estate, made by its representative, and hence there can be no revival of such a barred claim.

In Re Rogers (1 Redf., 231), it was held that the statute of limitations ran against an administrator's or executor's claim, the same as any other claim, and as the statute forbids the representative of an estate to retain

any part of the property of a decedent in satisfaction of his own debt or claim, until it shall have been proved to and allowed by the Surrogate (3 *R. S.*, 96, § 43 [6 ed.]), the proceeding under chapter 460, section 37, *Laws* 1837, to establish the same, or its establishment on the final accounting, would seem to be analogous to the commencement of an action to enforce the same, and no good reason can be suggested why any defense which might be interposed in such an action should be denied in such a proceeding.

This disposes of the first and second exceptions filed by the executor, and brings me to the consideration of the exception, filed by the contestant, to the allowance of $151.20, to the executor, for services rendered to the testatrix.

I fully concur with the conclusion of the referee, that the facts proved warrant the finding of an implied contract on the part of the decedent to pay for the services rendered by Mr. Noble what they were reasonably worth ; that such promise was not to be performed, or the services paid for, by the will of decedent, and that the trifling articles of gift were not on account of, or in part payment for such services, and that, therefore, the claim for the whole period was not taken out of the statute of limitations ; that the executor is only entitled to payment for so much of the services as became due and payable within six years of the decedent's death ; and that the claim for the other services rendered theretofore, is barred by the statute of limitations ; and, as it appears that the services began in July, immediately after the death of testatrix's husband, that the law implies an employment from year to year (Davis *v.* Gorton, 16 *N.*

*Y.*, 255 ; Smith *v.* Velie, 60 *Id.*, 110) ; that the executor is entitled to receive pay for six years and five months, to wit : for the year commencing July, 1871, the wages for which would fall due July, 1872, and could not have been outlawed until 1878, if the decedent had survived to that time.

But an examination of the testimony fails to show any legal basis for the finding of the referee, as to the value of the yearly services rendered.   And if I under-stand his "opinion," he bases his finding upon the as-sumption that there is proof that the services were worth, for the whole period, the sum charged, and yet the executor was not permitted to give evidence of such aggregate value personally, and the only evidence of value is that it is customary to charge five per cent. on such collections—though the same witness expressed the opinion that under the circumstances of this case, it was worth a larger percentage, without stating the amount. Hence, I am of the opinion, that on the testimony the referee could find that he was entitled to but five per cent. upon the amount collected within the period aforesaid, and interest on the amount, which became due at the end of each year, when it was payable, for it is quite clear that the referee must find the value according to the testimony, and not according to his individual esti-mate of such value ; and unless the executor shall be content with that sum, he may, at his option, take a new reference for the purpose of proving the real value.

As to the fourth exception by the executor, which re-lates to the rulings of the referee excluding his testimony with reference to transactions and communications with decedent, and what he did, as tending to show an implied

agreement on the part of the decedent to pay for said services, I am of the opinion that it should be over-ruled, and that the ruling of the referee was substantially conformable to section 829 of the Code.

In Brague *v.* Lord (2 *Abb. N. C.*, 1), it was held that the plaintiff could not give the declarations of a deceased person and a third person, made in the plaintiff's presence, in evidence, when the decedent made a remark which alluded to the plaintiff, and at the same time turned his head toward him ; the action being by the plaintiff against the representative of a deceased person, who, it was claimed, had employed the plaintiff as his attorney in certain matters.

In Freeman *v.* Lawrence (43 *N. Y. Super. Ct.*, 288), the action was brought to recover for legal services rendered by the plaintiff to the defendant's testator. The plaintiff was called on his own behalf, and asked if, about the time he was introduced to the decedent, he commenced any action for him ; and against the defendant's objection, he answered that he did. This was held error. See, also, Somerville *v.* Crook (9 *Hun*, 664).

Though these authorities do not with distinctness state the particular grounds upon which they were decided, yet it is presumed that the evidence was excluded in the cases, for the reason that whatever was done by the executor or the decedent, from which an obligation to pay could be presumed, was a transaction between him and the decedent, as really as if the parties had entered into a formal contract in writing therefor.

It is true that, on first thought, the question of what services were rendered, after the testimony warranted the inference that such an agreement existed, would

seem not to form any part of the transaction itself as a contract; but upon more careful consideration, it is apparent that such testimony is quite as obnoxious to the prohibition of the statute as would be the testimony of the claimant to the particular terms of an express agreement, for it is the performance of the services for the decedent, with her knowledge, that constitutes the agreement, which the law implies. And if the decedent were alive she might be able to show an agreement that such services were gratuitous or on account of an indebtedness, or that by reason of some special circumstances existing between the parties, they were less valuable, or that they had been paid for.

If I understand the purpose of the statute under consideration, it is to prevent the establishment of claims against estates by the testimony of those interested in such establishment, while the mouth of the alleged obligor is sealed in death and cannot controvert the claim, or the facts upon which it is sought to be established.

The same considerations justify the rejection of the claimant's testimony as to the value of his services.

The executor's account states an amount to be paid for a monument, pursuant to the directions of the will,— $700. If I understand the position of the executor, it is that that sum should be retained for that purpose, and that the court should so order, and that it has no power to interfere with his apparent discretion conferred by the will.

In the case of Emma J. Luckey (4 *Redf.*, 95), I had occasion to consider a kindred question, and therein reached the conclusion that such a discretion must be exercised within the limits of the law, and that the law

did not permit an unlimited or capricious exercise of discretion.

Ordinarily, the representative of an estate makes the expenditure on his official responsibility, and submits the result to the Surrogate on final accounting. But as no such expenditure has yet been made, nor any liability incurred, it is proper to consider at this time what would be a reasonable sum to be retained by the executor for the purpose named. Considering the small amount of the estate—it being less than $2,000—(for distribution), out of which must come the expenses of this accounting, commissions, and a reasonable sum for the monument, I am of the opinion that no greater sum than $250 should be allowed therefor, and that a larger sum would be an abuse of such discretion.

Referee's report modified accordingly..