CHAUNCEY S. BUTLER et al., Respondents, *v.* JULIA A. JOHNSON as Executrix, etc., Appellant.

Although a creditor of an estate was not bound, as the law stood in 1872, to institute proceedings to compel the sale of real estate to pay debts until after an executor or administrator had rendered an account, such omission did not stop the running of the statute of limitations as against the debt.

An executor or administrator is bound to set up the bar of the statute of limitations, and has no authority to allow a claim so barred.

As against an estate, therefore, a debt barred by the statute is to be regarded as no debt.

Where an executor, having a power of sale of the testator's real estate, to pay debts, is taking steps to execute the power for the purpose of paying debts which are outlawed, those who have succeeded to the testator's title may maintain an action to restrain such sale, as it would place a cloud upon their title.

J. died June 14, 1871, leaving a will which was admitted to probate June 28, 1871. By the will the executrix was authorized to sell the real estate to pay debts. In 1883 defendant, as executrix of J., upon application of a legatee and certain simple contract creditors, published a notice of sale of said real estate to pay said legatee and creditors. The accounts of said executrix had never been judicially settled. In an action brought by grantees of the heirs-at-law to restrain such sale, *held*, that both the legacy and debts were barred by the statute of limitations prior to the time the Code of Civil Procedure went into effect, and so were not revived by the provision of that Code (§ 1819), declaring that, for the purpose of computing the time within which a cause of action may be commenced by a legatee against an executor to recover a legacy, the cause of action is deemed to accrue when the executor's account is judicially settled; and that the action was maintainable by plaintiffs.

*It seems* the legatee could have asked the surrogate to decree payment of the legacy by the executrix, which decree could have been enforced if there were assets. (2 R. S. 90; § 45; id. 116, § 18.) After the expiration of eighteen months she could have cited the executrix to

account before the surrogate and the accounting could have been enforced. (2 R. S. 92, § 52 *et seq.*) She could have proceeded by action for a simple accounting or for payment of the legacies, and could have included therein a prayer that if the personal property was insufficient the execu- trix should be compelled to exercise the power of sale of the real estate given her by the will, and with the proceeds pay such legacies. The six years limitation, however, applied to all these remedies, as equity follows the law in cases of concurrent jurisdiction of the two courts, and when the remedy at law is as effectual as the equitable one the legal statute of limitation applies to the remedy in equity.

Causes of action in which, before the adoption of the Code of Procedure of 1848, the subject was the same at law and in equity, and the remedy only was different, were not included within the ten years limitation (§ 7ⅈ), but were provided for by the sections preceding limiting actions at law.

*It seems* the ten years limitation applied only to cases over which equity had, before the Code, exclusive jurisdiction.

*Butler* v. *Johnson* (44 Hun, 206) reversed.

(Argued October 4, 1888; decided November 27, 1888.)

APPEAL from order of the General Term of the Supreme Court in the fourth judicial department, made July 1, 1886, which reversed a judgment of the Special Term in favor of defend- ant and ordered a new trial. (Reported below, 14 Hun, 206.)

This action was brought by plaintiffs, who claimed, as pur- chasers of real estate, of which William P. Johnson died seized, to restrain defendant, as executrix of the will of said Johnson, from selling said real estate to pay debts and legacies. Said testator died June 21, 1871, leaving a will, which, with various codicils, were admitted to probate June 28, 1871.

The material provisions of the will are as follows:

"*First.* I do hereby devise and bequeath unto my wife, Julia Ann Johnson, and my daughter, Mary Butler, wife of George Butler, all my estate, both real and personal, in trust for the purposes hereinafter particularly mentioned, with full power and authority in them, or the survivors of them, to sell, dispose of and convey the same, and any and every part thereof, for the execution and carrying into effect the trusts and pro- visions of this my last will.

"*Second.* It is my will, and I do hereby order and direct, that the said trustees above named, or the survivors of them,

shall keep, retain and enjoy the possession of my estate and property, and carry on and continue the same business in which I am engaged and pursuing at the time of my death until my youngest daughter shall arrive to the age of twenty-one years; or in case of her death before arriving at that age, then until she would have arrived at the age of twenty-one if she had so long lived; and in case my trustees shall continue* said business as aforesaid, I hereby direct that the net profits arising from such business shall be devoted to the payment of my just debts by my executors. And I further will and direct that in case my said trustees, or the survivors of them, shall deem it best for the interest of my said wife and children to sell and convey the whole, or any part of my estate, before the time my youngest daughter will arrive at the age of twenty-one years, then and in that event my said trustees, or the survivors of them, may sell and convey the whole, or any part of my said estate, at any time they may see fit and proper to do so.

" *Third.* I do hereby order and direct my said trustees above named, or the survivor of them, to pay and discharge all my just debts from the income and avails of my estate, and if it shall be necessary to sell or mortgage any part of my estate to raise money for the payment of my said debts, then, and in that case, I hereby empower and authorize said trustees, or the survivor of them, to sell. and convey or mortgage so much, or such part or parts of my said estate as may be necessary for the payment of said debt.

" *Fourth.* I do hereby further will, order and direct that, after the payment of my just debts, and after the time my youngest daughter will arrive at the age of twenty-one years, my said trustees above named, or the survivor of them, shall invest so much of my estate on bond and mortgage upon unincumbered real estate as shall be necessary to produce an income of one thousand dollars annually, as and for an annuity, to be paid over to my said wife in semi-annual payments of five hundred dollars each, during the time she shall remain my widow, or unmarried, and which said bequest or annuity is

hereby declared to be in lieu of all dower or right of dower of the said Julia Ann Johnson in or to my said estate, and every part thereof.

"*Fifth.* I give and bequeath to my daughter Mary Butler, wife of George Butler, the sum of five hundred dollars; to Emma Jane Darrow, daughter of my said wife by a former husband, the sum of one thousand dollars; to William E. Darrow, the husband of said Jane Darrow, the sum of one thousand dollars; and to George Tunnicliff, the sum of one thousand dollars, the husband of Arlina Melvina Johnson, my daughter. And in case either of the above named legatees shall die without lawful issue, then his or her said legacy shall be and belong to the residuary of my estate hereinafter mentioned; and in case either of said last mentioned four legatees shall make any claim against my estate for services or otherwise, then said legacy to them respectively, the said legatee making any such claim shall forfeit all right and claim to his or her legacy as aforesaid.

"*Sixth.* I further will and declare that if my youngest daughter, Louisa Amelia Johnson, shall arrive to the age of twenty-one years, then and in that case the several and respective legacies mentioned in this will shall not become due or payable until the expiration of one year after my death, and without interest, except the annuity to my said wife as aforesaid, of which the first half year's payment shall be due and payable to her at the end of six months after my decease.

"*Seventh.* I give and bequeath the residue of my estate and property to my daughters, Mary Butler, Harriet H. Carey, Arlina Melvina Tunnicliff and Louisa Amelia Johnson, all the residue and remainder of my estate to be equally divided between them, share and share alike; and in case either of them shall die without lawful issue, the share or portion of any so dying shall go to and belong to the survivor or survivors of said residuary legatees and their issue lawfully begotten."

At the testator's death he owed debts to Amasa Abbott, Harriet Conkling and Nicholas Vrooman, who presented their

claims pursuant to notice, published by Julia A. Johnson, as executrix, who alone appears to have qualified and acted; these claims were accepted by her, and these are the only unpaid claims against the estate.

On March 28, 1882, the residuary legatees and devisees divided the estate between them. Tunnicliff, Carey and Blake conveyed to Mary J. Butler the lands described in the complaint, and other lands, which she accepted as her share, and she, on the same day, conveyed to Tunnicliff, Carey and Blake the remainder of the estate, they agreeing to pay all of the liabilities of the estate. The defendant received from Tunnicliff, Carey and Blake, a mortgage, in consideration of which she released her claim upon the estate for her annuity, and by which mortgage the mortgagors agreed to pay Mary J. Butler $4,166.66 at the death of the defendant. Part of the real estate deeded to Tunnicliff, Carey and Blake has been sold under mortgages given to secure the testator's debts, and the remainder under mortgages given by the testator in his lifetime. Tunnicliff, Carey and Blake are insolvent. The plaintiffs in this action have acquired title to the real estate described in the complaint by conveyances from Mary J. Butler, and her grantees; they purchased with knowledge of the situation of the estate. The defendant's accounts have not been settled before the surrogate. In 1881 Emma J. Darrow filed a petition in the Surrogate's Court for an order compelling the payment of her legacy. Allen Bloomfield, to whom Abbott, Conkling and Vrooman had assigned their claims, joined in the petition, and asked that the above and certain other debts contracted by the executrix in the management of the estate, be paid. The surrogate decreed that all of the debts and the legacy should be paid by Julia A. Johnson and Mary J. Butler, out of the assets in their hands. Mary J. Butler appealed to the Supreme Court, where the surrogate's decree was reversed as to her. February 21, 1883, the defendant advertised to sell, at public auction, the premises described in the complaint, acquired by the plaintiffs from Mary J. Butler, to satisfy the debts of her testator and the aforesaid decree of the surrogate.

The plaintiff began this action for a perpetual injunction restraining the sale of the premises. The trial court held that the legacy of Mary J. Darrow, and the debts of the intestate, were a lien and charge upon the real estate, and that it could be sold under the power of sale contained in the will, but restrained the sale until the accounts of the defendant should be judicially settled by the surrogate. The court further held that the debts contracted by the defendant as executrix were not a lien upon the real estate, and that it could not be sold for their payment. No costs were given. The plaintiffs appealed from that part of the judgment providing that defendants may sell their real estate for the payment of Mary J. Darrow's legacy, and the testator's debts above enumerated.

*J. A. Lynes* for appellant. Section 1819 of the Code of Civil Procedure was a substitute for and took the place of the other statute as to claims for payment of legacies or distributive shares where they were not already barred. (*In re Thompson*, 26 W. D. 172; *In re Vandyke*, 25 id. 177; *Quackenbush* v. *Quackenbush*, 3 N. Y. S. R. 755; *Watson* v. *R. R. Co.*, 93 N. Y. 522.) An action to compel the payment of a legacy may be brought within ten years. (*Scott* v. *Stebbins* 27 Hun, 335; 91 N. Y. 605; *Shannon* v. *Howell*, 36 Hun, 47; *Salisbury* v. *Morse*, 7 Lans. 359; 55 N. Y. 675; *Edmunds* v. *Diefendorf*, 5 Barb. 398.) The statute of limitations, applies to "actions" for payment of a legacy in Surrogate's Courts. (*In re Vandyke*, 25 Week. Dig. 177.) By the law, as it stood in 1872, the holder of claims against an estate was not bound to institute proceedings for their payment until after the executrix had rendered an account, and the statute did not begin to run until such accounting was had. (Laws of 1837, chap. 460, as amended; Laws of 1843, chap. 172; Laws of 1847, chap. 298; 3 R. S. [5th ed.] 196, § 59; *Skidman* v. *Romain*, 2 Bradf. 122.) A creditor might, at any time, institute compulsory proceedings to procure a decree

SICKELS — VOL. LXVI.    27

from the surrogate to sell the real estate of a decedent to pay his debts, but not until after an accounting by the executor or administrator before the surrogate. (3 R. S. [5th ed.] 196, § 59; Dayton on Surrogates [3d ed.], 623; *Ferguson* v. *Broome*, 1 Bradf. 10.) If the remedy of the legatee and creditors had become or was unavailing, then they could resort to their action in equity to compel payment and foreclose their lien. (*Quackenbush* v. *Quackenbush*, 3 N. Y. S. R. 755, 757.)

*F. G. Fincke* for respondents. The claims of the creditors and legatee of the testator are barred by the statute of limitations. (*Sharp* v. *Freeman*, 2 Lans. 171; 45 N. Y. 802; *Raynor* v. *Gordon*, 23 Hun, 264; *McCartee* v. *Camel*, 1 Barb. Ch. 455; *Smith* v. *Remington*, 42 id. 75; *Am. Bible Soc.* v. *Hebbard*, 51 id. 552; 41 N. Y. 619, note; *Clark* v. *Ford*, 1 Abb. Ct. App. Dec. 359; *S. C.*, 3 Keyes, 370; *Loder* v. *Hatfield*, 71 N. Y. 92.) The statute of limitations runs against the execution of a mere power in trust, and may be interposed in favor of an heir or devisee. (*Dickinson* v. *Teasdale*, 31 Beav. 511; 1 De Gex, J. & S. 52; *Coope* v. *Creswell*, L. R., 2 Ch. App. Cas. 112.) The rule formerly prevailing in equity by which no statute of limitations was applicable in suits of equity for certain causes of action, is revoked and annulled by the statute. (*Loder* v. *Hatfield*, 71 N. Y. 93, 104; *De Pierres* v. *Thorn*, 4 Bosw. 283, 289; *Salisbury* v. *Morss*, 7 Lans. 359; 55 N. Y. 675; *Rundle* v. *Allison*, 34 id. 180, *Peters* v. *Delaplaine*, 49 id. 363; *Hubbell* v. *Sibley*, 50 id. 468.) Where there is a legal remedy, or where the remedies in law and equity are concurrent, equity follows the law, and the legal limitation applies, and not the equitable. (*Loder* v. *Hatfield*, 71 N. Y. 92; *Borst* v. *Corey*, 15 id. 505; *Rundle* v. *Allison*, 34 id. 180; *Kane* v. *Bloodgood*, 7 Johns. Ch. 90, 125; *Murray* v. *Coster*, 20 Johns. 570; *Gallatin* v. *Cunningham*, 8 Cow. 360; *Humbert* v. *Trinity Church*, 24 Wend. 587; *Bertine* v. *Varian*, 1 Edw. Ch. 343; *Renwick* v. *Renwick*, 1 Bradf. 234.) Any person interested in the estate as heir, devisee, legatee or creditor may, without the concurrence of the executor, interpose

the statute of limitations as a defense to a claim brought against the estate. (*Partridge* v. *Mitchell*, 3 Edw. Ch. 180; *Sherwen* v. *Vanderhost*, 1 R. & M. 347; *Kendrick's Estate*, 15 Abb. N. C. 189; *Warren* v. *Paff*, 4 Bradf. 260; *Sharp* v. *Freeman*, 45 N. Y. 802; *Visscher* v. *Wesley*, 3 Demarest, 301; *Mooers* v. *White*, 6 Johns. Ch. 360; *Bloodgood* v. *Bruen*, 8 N. Y. 362; *Buckle* v. *Chapin*, 1 Lans. 443; *Burnett* v. *Noble*, 5 Redf. 69.) The court, at General Term, was right in holding that the appellant could not and should not voluntarily execute the power of sale for the payment of debts and legacies which could not be enforced by reason of the lapse of time. (*McClaren* v. *McMartin*, 36 N. Y. 88, 91; *Visscher* v. *Wesley*, 3 Demarest, 301; *Wilson* v. *Wilson*, 2 id. 462; *Burnett* v. *Redfield*, 5 Redf. 69; 33 How. 449; 3 Abb. [N. S.] 345; *Richard* v. *Williams*, 7 Wheat. 113; *Barnard* v. *Onderdonk*, 98 N. Y. 159; Perry on Trusts [2d ed.] 417.) A legacy is not a debt, and land, charged with the payment of legacies, is not charged with the payment of debts. (*In re Dolan*, 88 N. Y. 309; *Hetzel* v. *Barber*, 69 id. 13.) A power to sell real estate to pay debts does not include a power to sell to pay legacies. (*Russell* v. *Russell*, 36 N. Y. 581.)

Peckham, J. The debts were barred by the statute of limitations at the time the defendant commenced her advertisement of her intended sale of the real estate of the plaintiff's for the purpose of paying them. They were simple contract debts, and became outlawed, at most, in six years after the expiration of eighteen months from the death of the testator. Even though a creditor of an estate was not bound, as the law stood in 1872, to institute proceedings to compel the sale of real estate to pay debts until after an executor or administrator had rendered an account, such omission did not stop the running of the statute as against the debt. (*Raynor* v. *Gordon*, 23 Hun, 264.) The executor or administrator could institute such proceedings for three years, and during or after that time could be compelled by the creditor so to do, provided the administrator had rendered an account. (*Ferguson*

v. *Broome*, 1 Bradf. 10.) This was a remedy open to a creditor to enforce the collection of a debt, but it did not enlarge the time for the running of the statute against it.

An executor or administrator is bound to set up the bar of the statute, and he would not be allowed in his accounting any sum paid upon a debt which, at the time of its payment by him, was barred by such statute. (*Bloodgood* v. *Bruen*, 8 N. Y. 362; *Bucklin* v. *Chapin*, 1 Lans. 443, 448; *Burnett* v. *Noble*, 5 Redf. 69.)

As against an estate, therefore, a debt barred by the statute must be regarded as no debt. There is not only no moral obligation to pay it, but, on the contrary, there is a duty to set up the bar of the statute resting upon the executor or administrator.

The debts in this case, therefore, constituted no legal claim against the estate, and could form no foundation for the proposed exercise by defendant of the power to sell real estate for the payment of debts given her by the will. It is not pretended that at this time she had any other power. We have no doubt that the six years statute applies to the debts at all events.

In regard to the legacies, the question is more troublesome. The defendant says the cause of action for the recovery of the legacies was not outlawed, because the legatee had a right, under 2 Revised Statutes, 114, section 9, to commence an action to compel the executrix to exercise her power of sale of the real estate under the will, and with the proceeds pay her legacies, and that such cause of action was of an equitable nature; that such a cause of action did not become barred until the lapse of ten years, which had not passed when the Code of Civil Procedure took effect, in September, 1880, and that the limitation prescribed in that Code then became applicable, and under that limitation the cause of action against the executrix does not accrue until her accounts are judicially settled. (Code of Civil Pro. § 1819.) It is admitted that her accounts have never been thus settled. All this reasoning depends upon the question whether the action

to recover payment of the legacy was outlawed by the six years statute, which had run before the adoption of the Code of Civil Procedure in 1880. If it had it was not revived by that Code.

After the death of the testator, and when the payment of the legacies became due, the legatee had several remedies to obtain such payment. She could have asked the surrogate to decree payment of them to her by the executrix, and payment could have been enforced if there were assets, and in this respect the real estate must under the will be regarded as assets. (2 R. S. 90, § 45; id. 116, § 18.) She could also, after the expiration of eighteen months, have cited the executrix to account before the surrogate, and an accounting could have been enforced. (2 R. S. 92, § 52 *et seq.*) She could also have proceeded by action for a simple accounting or for payment of the legacies, or she could have included in such action a prayer for relief that if there were not enough personal property to pay the legacies, the executrix should be compelled to exercise the power of sale of the real estate given her by the will, and with the proceeds pay such legacies. The six years statute applied to all these remedies, for they were of a legal nature, excepting the last. If there had been no other remedy than such last-mentioned one, it is plain the ten years statute would apply. The claim is made, upon the part of the plaintiff, that the subject-matter of such a suit, the cause of action, is the recovery of payment of the legacy, and that all these various modes of obtaining payment thereof are simply different remedies to attain the same object, and that when such is the case, and the two courts under the old system of law and equity had concurrent jurisdiction over the subject-matter or cause of action, and the remedy at law was as effectual as the equitable one, the legal statute of limitations applied to the remedy in equity, and if the cause of action were barred at law, it was equally so in equity. This was the rule in the days before the adoption of the Code, and plaintiffs claim that it still exists. All the relief obtainable by action, in the nature of a suit in equity by the legatee herein, could have been obtained by an

action of a purely legal nature during six years. The proceedings before the surrogate were entirely adequate to obtain payment of the legacies. Under the will the real estate would be treated as assets for the purpose of selling it to pay the legacies. The rule of limitation, that equity follows the law, in cases of concurrent jurisdiction of the two courts, was not brought into being by the Revised Statutes. In *Hovender* v. *Lord Annesley* (2 Sch. & Lef. 607), Lord Chancellor REDESDALE stated: "But it is said that courts of equity are not within the statutes of limitation. This is true in one respect. They are not within the words of the statutes, because the words apply to particular legal remedies. But they are within the spirit and meaning of the statutes and have been always so considered. I think it is a mistake in point of language to say that courts of equity act merely by *analogy* to the statutes. They act in *obedience* to them; the statute of limitations applying itself to certain legal remedies for recovering the possession of lands, for the recovery of debts, etc., and equity which in all cases follows the law, acts on legal titles and legal demands, according to matters of conscience which arise and which do not admit of the ordinary legal remedies. Nevertheless, in thus administering justice according to the means afforded by a court of equity, it follows the law. * * * I think, therefore, courts of equity are bound to yield obedience to the statute of limitations upon all legal titles and legal demands, and cannot act contrary to the spirit of its provisions. I think the statute must be taken virtually to include courts of equity, for when the legislature by statute limited the proceedings by law in certain cases, and provided no express limitation for proceedings in equity, it must be taken to have contemplated that equity followed the law, and, therefore, it must be taken to have virtually enacted, in the same cases, a limitation for courts of equity also."

Chancellor KENT said, in commenting upon the language of the court in the above case, that it meant that if the party had a legal title and a legal right of action, and, instead of proceeding at law, resorted to equity — instead of bringing his

action of account or detinue or case for money had and received at law, he files his bill for an account, the same period of time that would bar him at law would bar him in equity. (*Kane* v. *Bloodgood,* 7 Johns. Ch. 89.)

When the same subject-matter of the demand in equity can also be made the subject of an action at law, the rule of analogy applies with all its force. (*Kane* v. *Bloodgood, supra.*)

In *Murray* v. *Coster* (20 Johns. 575, 585) the same rule was announced by the Court of Errors.

The Revised Statutes (2 R. S. 301, art. 6, §§ 49–51) enacted the same rule, and, in cases of concurrent jurisdiction, the legal limitation was applied. The revisers, in their notes to these sections, stated that no new rule was intended, but the sections adopted the language of the Court of Errors in the case of *Murray* v. *Coster* (*supra*). In truth, the Revised Statutes simply enacted the then existing law on that subject. The Code of 1848 (Laws of 1848, 511, § 66) repealed the provisions of the Revised Statutes as to limitations upon the time for the commencement of actions other than for those relating to real property, and substituted provisions of its own on that subject. Provision being made in other sections for many cases, it was enacted by section 77 of that Code that "an action for relief, not hereinbefore provided for, must be commenced within ten years after the cause of action shall have accrued."

The claim is now made that, by this repeal of the Revised Statutes upon the subject of the limitation of actions and by the adoption of affirmative provisions on that subject by the Code, the old rule under discussion has been abolished and does not now exist; that it was repealed in terms and has not been re-enacted.

In *Loder* v. *Hatfield* (71 N. Y. 92, 104) the question is mooted by FOLGER, J., but not discussed. In *Salisbury* v. *Morss* (7 Lans. 359), the learned judge writing the opinion stated his conviction that the rule was abrogated by the Code and had never been re-enacted. The point was not necessary to the decision of the case, but it appears that it is one of some doubt, or, at least, open to a possible variety of views.

The argument urged is, that the Code, in terms, has repealed the statute, and it has not been re-enacted; that it was inappropriate to the new system under which all actions were to be prosecuted in the same forms and before the same tribunals, whether they were to enforce legal or equitable rights, and, for that reason, it became necessary that changes should be made in the provisions of the statutes concerning the time limited for their commencement; that, in such changes the provision relating to concurrent jurisdictions was omitted, and that prescribing the time in which actions for relief could be brought was re-enacted, subject to the single exception including certain actions for relief on account of fraud.

The argument, it must be conceded, is quite strong. The effect of it would, however, be to lengthen, by four years, the time in which many actions could be commenced, which, under the old rule, would have been limited to six, and in actions, too, where no reason can be given for such a change. We think that in causes of action which, before the adoption of the Code the two courts had concurrent jurisdiction over, or, in other words, where the subject of the action was the same in both courts, and the remedy only was different, such actions are included in and provided for by the sections preceding the above-mentioned seventy-seventh section, and hence are not included in that section as within the ten years statute. The simple repeal of those sections of the Revised Statutes relating to the commencement of actions would not have made any alteration in the law applicable to these causes of action, over which the two courts had theretofore had concurrent jurisdiction, for, as we have seen, the law was the same before their enactment. We must look further and see if the Code has provided any rule on this subject which is at war with the law as it stood before it was adopted. We do not think it has. Those sections which precede the seventy-seventh, wherein the time for the commencement of actions of what would theretofore have been called a legal nature, is prescribed, must be taken to include causes of action over which courts of equity had theretofore had concurrent juris-

diction with courts of law, because, as was said by Lord REDESDALE, in the case of *Hovenden* v. *Annesley* (*supra*), the legislature must be taken to have contemplated the rule then existing, that equity followed the law in such cases, and to have virtually enacted for them the same limitation. This would leave the seventy-seventh section to apply to all cases over which equity had theretofore had sole jurisdiction, where no other rule had been specifically provided for one or more of such cases.

When the legislature prescribed, for instance, six years in which to commence an action upon a liability or obligation, express or implied, we think it meant to include in such description an action which might formerly have been prosecuted in either court, upon or by reason of such obligation, and where the remedy would have been adequate in either, and if the form of the remedy chosen were such as would formerly have been cognizable in chancery, yet the limitation applicable to the remedy at law would apply. There can be no sense in enlarging the time by a mere change of the form of the remedy sought, where the subject matter of the action is precisely the same, and the remedy in either was adequate.

This holding retains the application of the statute to a number of cases which, before the adoption of the Code, had been limited to six years, and where no good reason can be suggested for lengthening such time to ten years.

The question whether the Code has altered this old rule does not seem to have been heretofore decided by this court. In *Borst* v. *Corey* (15 N. Y. 505), the old rule was enforced because the cause of action arose prior to the Code, yet nothing in the opinion intimates that there was any change effected by the Code. The same may be said of *Clarke* v. *Ford* (3 Keyes 370.) In *Rundle* v. *Allison* (34 N. Y. 180), it seems to have been assumed that the old rule still existed, and no discussion is had regarding it, although the cause of action in that case arose subsequent to the adoption of the Code.

The present case seems to demand its decision, and we hold

as already indicated. It thus appears that although the form of the remedy against the executrix, by commencing an action to compel her to exercise her power of sale given by the will, is of an equitable nature, and if it had been the only remedy the ten years statute would apply, yet, as there had been several other equally efficient remedies of a legal nature to collect the legacies, the legal statute applies to the equitable remedy, and hence, at the time of the adoption of the Code of Civil Procedure the claim of the legatee, by reason of the non-payment of the legacies, was barred, and there was, therefore, no legal demand against the estate at that time either for the payment of debts or legacies.

The further question now arises whether the plaintiffs have a cause of action against the defendant and a right to come into court and ask for an injunction restraining her further proceedings towards such sale, when the foundation of the right rests upon the proposition that there are no legal claims against the estate, and that again depends upon the barring of such claims by setting up the statute of limitations against them. Can the defendant be prevented from voluntarily doing what no creditor or legatee could now compel her to do?

Assuming that the claims are outlawed and that the executrix, if sued by the creditors of the estate or by the legatee, could successfully interpose the bar of the statute to the maintenance of such suit or of any proceeding against her, can these plaintiffs properly enjoin the defendant from taking steps to voluntarily pay debts which are thus outlawed?

We think, they can, as it is the duty of an executrix to set up the bar of the statute; she is guilty of a breach of her duty in taking any steps towards the payment of debts which are outlawed, and hence are no valid claims against the estate. And if her proceedings are continued to a sale and a conveyance by her under such sale and in assumed execution of her power of sale created by the will, it is apparent that a cloud will be placed upon the title to the property owned by the plaintiffs and of which they are in possession. In taking proceedings under such circumstances to prevent the further action of the

defendant which would otherwise result in placing such a cloud upon the title to their property, we think the plaintiffs do not run counter to any principle or decision holding the general view that the statute of limitations can only be used as a shield and not as a sword.

Under the facts of this case, where it appears to be the duty of defendant to contest these very claims on the ground that they are barred, and where in such case she substantially acts as a represenative of those who own the real estate, bound in the discharge of her duty to set up the bar, and where, instead of so doing, she violates her duty as a *quasi* trustee and takes steps towards selling such real estate and towards placing a cloud upon the title of those who own it, and whose interests therein it is her duty to protect, we think that the plaintiffs have a right to ask the aid of the court to prevent this substantial trustee from violating her duty and from placing this cloud upon their title, even though in so doing the plaintiffs necessarily use the statute of limitations as the foundation of their claim; under such circumstances the bar of the statute is simply a defense to the affirmative and improper proceedings of the defendant, and is not an attack upon any right of a third person.

We admit the general rule as stated by the learned judge who wrote at Special Term, but think this case is no violation thereof.

We think the order of the General Term reversing the judgment of the Special Term was right, and should be affirmed, and judgment absolute granted against the defendant with costs, in accordance with her stipulation.

All concur, except EARL, J., taking no part.

Order affirmed and judgment accordingly.