(23 Misc. Rep. 423.)

### EAST RIVER SAV. INST. v. BARRETT.

(Supreme Court, Trial Term, New York County.    April, 1898.)

1. STATUTES OF LIMITATION—FRAUD—ACCRUAL OF CAUSE—NOTICE.
    A deposit by M. in his own name was, without authority, changed to be in trust for B. M. became insane, and with knowledge of that fact, and on representations by B. that she owned it, the bank changed it again, to be solely in her name, and honored drafts thereon. M. recovered from the bank, which then sued B.'s executor to recover, and for an accounting. *Held,* that the bank was put on inquiry, and was charged with knowledge of the rights of parties at the time the money was paid, and hence the statute of limitations was not suspended by Code Civ. Proc. § 382, subd. 5, providing that an equitable cause of action on grounds of fraud shall not be deemed to have accrued until discovery of the fraud.

2. SAME—ACTIONS FOR RECOVERY OF MONEY ONLY.
    In effect, the action was for the recovery of money only, and not within said section, which applied only to equitable causes for other than the recovery of money only.

Action by the East River Savings Institution against Clarence T. Barrett, trustee.    Judgment for defendant.

Charles N. Judson, for plaintiff.
Sidney F. Rawson, for defendant.

BARNARD, J.    Nathan B. Mundy on the 1st of February, 1877, deposited $1,000 with the plaintiff, and took a bank book showing the deposit in his own name.    On the 19th of February, 1877, this bank book was changed by the bank so as to make the deposit read, "Nathan B. Mundy, in trust for S. Barrett, February 19, 1877."    No authority is shown for this change upon the part of the original depositor.    On the 5th of December, 1879, the book was again changed by the bank, so as to make the deposit stand on the book in the name of S. Barrett.    This last change was made by the bank when Mundy was in the lunatic asylum, and incapacitated thereby from acting understandingly.    Mrs. Barrett was Mundy's grandmother, and this last change was made on her application.    She was the widow of Nathan Barrett.    She claimed to own this deposit.    She wrote to the bank that she wished the account put to her individual credit; that her grandson was insane; and this letter was accompanied by an affidavit on the part of her husband's executor that her statement was true.    On the 27th of April, 1880, Mrs. Barrett drew out the balance then unpaid; having before that date, and in 1880, drawn out portions thereof on three separate occasions.    The payments were all made on her individual draft.    Mrs. Barrett died in 1883.    In November, 1894, Nathan B. Mundy brought an action against the bank for the original deposit and interest, and in September, 1895, obtained a verdict from a jury that this money was his own.    By Mrs. Barrett's will, Nathan B. Mundy is entitled to a life use of the residue of her estate, with remainder over after his death to other parties.    The defendant is the trustee for this fund.    The justice of the plaintiff's claim is undeniable.    Mrs. Barrett secured a deposit which she did not own, and had no right to receive, under the evidence.    No intentional misstatement was made by her.    She was

a lady of the highest character. She made her claim in good faith, but it was not well founded. She gave strong evidence tending to support her right to this money, but I feel bound, on this question, to find with the jury.

The sole question remaining is presented by subdivision 5 of section 382 of the Code, which reads as follows:

"Within Six Years. An action to procure a judgment, other than for a sum of money, on the ground of fraud, in a case which, on the thirty-first day of December, eighteen hundred and forty-six, was cognizable by the court of chancery. The cause of action, in such a case, is not deemed to have accrued, until the discovery, by the plaintiff, or the person under whom he claims, of the facts constituting the fraud."

This section covers all cases where the court of chancery on that day had cognizance solely, and all cases where the jurisdiction was concurrent with the lower court. Bosley v. Machine Co., 123 N. Y. 550, 25 N. E. 990. It applies where a sum of money is demanded incidentally to the decree in equity. Carr v. Thompson, 87 N. Y. 160. What action did the bank have on the 27th of April, 1880, when the last of the money had been drawn out by Mrs. Barrett, on the facts as they now appear? The bank had two forms of action: (1) Contract. A payment made to Mrs. Barrett under a claim of title not good, whether made intentionally or by mistake, would support an action by the bank against her. The law would imply a promise to repay. (2) The bank would have an action for fraud. The complaint would then aver that the payment was procured by an intentional falsehood, or by a statement not known to be true. This action, whether called legal or equitable, would be one for a sum of money, merely, on the ground of fraud, and as such would not be relieved from the six-years limitation in this subdivision 5 of section 382. Miller v. Wood, 116 N. Y. 351, 22 N. E. 553. The demand for an accounting in the complaint does not furnish the requirement of an equitable claim which would make the claim other than one for the recovery of money only. This action must be judged by what it might have been in April, 1880. There was no right to an accounting then against Mrs. Barrett, and it is not within the theory of the subdivision that an accounting after the death of the wrongdoer would give an additional right, which would not exist when the cause of action arose. My conclusion, therefore, is that the action is barred by the statute of limitations. Was there anything fraudulent to discover? There was no intent to cheat or defraud, but Mrs. Barrett got money she did not own, and she ought not to keep it; but the defendant is an executor and trustee, and he must plead the statute, or become personally liable for the loss of the estate, so far as it is lost by his omission. Butler v. Johnson, 111 N. Y. 204, 18 N. E. 643. The bank knew every fact but one. The deposit was received from Mundy as his own. The bank, without authority, changed the book so as to make Mrs. Barrett beneficiary, and Mundy trustee for her. The bank, without authority from Mundy, and with full knowledge that he was at the time insane, again changed the deposit book so that it gave the title of the fund to Mrs. Barrett absolutely, and this was finally followed by the payment of the money to her as

her individual property. The bank knew everything then that appears now, except that the validity of the claim of the title was a thing of the future, in 1880. The bank should have known what it might have known on reasonable inquiry. The bank had notice that the first change was wholly at war with the deposit, and with the final claim. After Mrs. Barrett obtained that change, the bank should have asked why the conditions were changed so as to make her absolute owner. The bank knew in December, 1879, that it was paying away the property of a lunatic solely upon the representation made by his grandmother that she was the owner. And the bank knew that, as against the original depositor, the change was of no use, and that its justification would finally depend on the real fact as to the title. When the title was found to be in Mundy, the bank was without defense, under the changed books, and under Mrs. Barrett's claim of title. I therefore find that the bank knew of the facts constituting the fraud in 1880, when the money was paid. Higgins v. Crouse, 147 N. Y. 411, 42 N. E. 6. I believe the real facts would justify every one. Mr. Mundy became erratic, and finally insane. His grandmother loved him. He was her heir and next of kin. His grandmother believed this deposit was her own. The demented child must be cared for. He was cared for, and he should, under the circumstances, have let the deposit go. He gets now the use of the sum of money from his grandmother's estate. He has obtained from the bank the deposit which, if not applied to his use, forms part of the estate he uses. The result is not one which should be deemed satisfactory to the grandson.

Judgment for defendants, with costs.