## In re SALMON.

(Circuit Court of Appeals, Second Circuit. December 24, 1917.)

### No. 69.

1. LIMITATION OF ACTIONS ⟬═⟭163(1)—PAYMENT ON BARRED DEBT—EFFECT.

A payment made by one who knows he is insolvent, and which he directs to be applied to his credit, and which is made to one who has no knowledge of the insolvency of the payor, takes the debt out of the statute of limitations, so that on the bankruptcy of the payor it may come in and participate in the assets, for the statute does not extinguish the debt, but merely bars the remedy, and is a personal privilege, which the debtor may waive or assert at election.

2. LIMITATION OF ACTIONS ⟬═⟭158—PAYMENT ON BARRED DEBT—NOTE.

Where there was only one debt due from the insolvent, his direction to put to his credit a note delivered to the creditor must be construed as a payment on the debt, and to have revived the same, although it had been barred by limitations.

3. BANKRUPTCY ⟬═⟭166(3)—PREFERENCES—KNOWLEDGE OF INSOLVENCY.

To constitute a voidable preference under the Bankruptcy Act, the person receiving the payment or benefited by it must have reasonable cause to believe that the debtor was at the time insolvent, and the mere fact that claimant knew from the debtor's statement that he had previously been financially embarrassed and hard pressed by his creditors is not enough to show that a payment on the eve of bankruptcy was a preference, where the debtor had subsequently informed the claimant that he had financed his business and was all right.

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of Charles Salmon, bankrupt. From an order (239 Fed. 413) sustaining an order of the referee, expunging the claim, the estate of Hamilton H. Salmon appeals. Reversed, with directions to reinstate the expunged claim.

This cause comes here on appeal from an order made by the District Court of the United States for the Southern District of New York. The facts are as follows:

The bankrupt, on January 27, 1916, made a payment on account by giving the note of one Bernstein to his order and indorsed by him to the estate of Hamilton H. Salmon, in the sum of $125.09, which note was renewed at maturity. The renewed note was duly paid. At the time the note was turned over to the estate the bankrupt was indebted to it in the sum of $60,067.54. Prior to this payment by the Bernstein note the last payment the bankrupt had made on the account had been made on June 3, 1896, so that the debt had become barred by the statute of limitations. At the time the bankrupt

turned over the Bernstein note, he directed one of the executors of his brother's estate to credit it to his account, and his account was accordingly so credited. About a week later Charles Salmon was adjudicated a bankrupt, and on April 7, 1917, the estate of Hamilton H. Salmon filed proof of claim. The trustee thereupon moved to expunge the claim on the ground that Charles Salmon was not indebted to the claimant in any sum, and that, if it were, the statute of limitations was a bar to the claim. At the hearing before the referee, one of the executors of the estate, being the executor to whom the bankrupt delivered the note, testified that the bankrupt said that he was having difficulty in business, and that that was all that he said. He was asked whether he said that he could not meet his obligations, and the witness replied. "No; he did not say anything of the kind." The witness was then asked whether he (the witness) inferred from what was said that his brother had difficulties in meeting his obligations; and he answered that he drew no such inference, and that his brother had made the same remark to him in the year preceding, "but he then told me that he was all right again." The witness also said that, every time he saw his brother, he had asked him for payments on the indebtedness due from him to the estate. He saw him very infrequently, and had not seen him in a year before he came to turn over the Bernstein note, and that he remained only about two minutes. "I had two gentlemen in my private office, and he wanted to see me for a moment, and he just left that note and said, 'Put it to my credit,' and he walked right out. He had an engagement, and I had two gentlemen in my private office at the time."

The referee held that the payment did not remove the bar of the statute of limitations from the bankrupt's indebtedness to the estate of Hamilton H. Salmon, and that there was nothing in the evidence sufficient to justify a finding that the turning over of the Bernstein note was an acknowledgment on the part of the bankrupt of the $59,000 indebtedness for which the estate proved its claim. He added that, "even if the claim were allowed, it would have to be on condition that the payment, which was clearly preferential, be paid back into the estate." He thereupon entered an order expunging that claim from the files in his office. An appeal was taken to the District Court, and the order of the referee was confirmed. The District Judge stated that he could not "agree that a bankrupt, finding himself in a desperate financial position, may revive an outlawed claim by a written acknowledgment or a part payment. * * * By it alone the assets of the bankruptcy are charged with an obligation which was either nonexistent before, or against which there was a valid defense, it makes no difference which."

Blau, Zalkin & Cohen, of New York City (Lewis H. Saper, of New York City, of counsel), for trustee.

Williams, Folsom & Strouse, of New York City (Lazarus Goldstone, of New York City, of counsel), for claimant.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). [1] The question presented is whether a payment, made by one who knows he is insolvent at the time, and which he directs to be applied to his credit, and which is made to one who has no knowledge of the insolvency of the payor, takes the debt out of the statute of limitations, so that it can come in and share in the assets in the bankruptcy court pari passu with the other claims. We are satisfied that the question must be answered in the affirmative.

A statute of limitations does not extinguish a debt. It goes to the remedy, and not to the cause of action. It is merely a personal privilege which the debtor may waive or assert at his election. The cases are so numerous to that effect that it is not necessary to cite them.

In Quantock v. England, 4 Burr. 2628 (1770), which was an action by the assignees of a bankrupt, Lord Mansfield said:

"It is settled 'that the statute of limitations does not destroy the debt'; it only takes away the remedy. The debtor may either take advantage of the statute of limitations, if the debt be older than the time limited for bringing the action; or he may waive this advantage, and, in honesty, he ought not to defend himself by such a plea. And the slightest word of acknowledgment will take it out of the statute. Here the debtor himself has not objected; he has submitted to the commission, and been examined under it. Therefore the objection does not now lie in the mouth of a third person."

The other three judges concurred with the Chief Justice. Such has been the law in England ever since.

In Campbell v. Holt, 115 U. S. 620, 6 Sup. Ct. 209, 29 L. Ed. 483 (1885), the Supreme Court held that the statute of limitations does not, after the prescribed period, destroy or discharge the debt. The debt and the obligation to pay it remains. The debtor is simply permitted, if he elects to do so, to plead the statute as a bar. The Legislature could repeal the statute after the period had run and the bar had been created, and then the creditor might sue and recover on his cause of action, and the constitutional rights of the debtor would not be violated by the legislation. The court, in its opinion written by Mr. Justice Miller, said:

"We certainly do not understand that a right to defeat a just debt by the statute of limitations is a vested right, so as to be beyond legislative power in a proper case. * * * We can understand a right to enforce the payment of a lawful debt. The Constitution says that no state shall pass any law impairing this obligation. But we do not understand the right to satisfy that obligation by a protracted failure to pay. We can see no right which the promisor has in the law which permits him to plead lapse of time, instead of payment, which shall prevent the Legislature from repealing that law, because its effect is to make him fulfill his honest obligation."

The court pointed out that a distinction in this respect exists between statutes of limitation which bar an action to recover real or personal property and those which bar the recovery of a debt. And in Hulbert v. Clark, 128 N. Y. 295, 28 N. E. 638, 14 L. R. A. 59 (1891) the New York Court of Appeals, through Judge Earl, asserts, although in a dictum, a like doctrine. A somewhat analogous question to that arising in the instant case arose in New York before the Supreme Court, General Term, Second Department, in Lawrence v. Harrington, 48 Hun, 618, 1 N. Y. Supp. 577 (1888). In that case, after a debtor had obtained his discharge in bankruptcy, he made a payment on certain promissory notes included in his discharge, and it was held that both as against the bankrupt's discharge and the statute of limitations the old debt was restored, and a judgment obtained thereon was affirmed.

[2] There can be no question, we think, but that the payment which the bankrupt made was intended to apply upon the debt. The District Judge, differing therein from the referee, thought that as there was no other debt between the parties, and as the bankrupt asked to have the note applied to his credit, there could be no possible question that he intended to make a part payment. That is the proper inference to be drawn under the circumstances.

[3] We also agree with the District Judge that the facts do not disclose a preference. To constitute a voidable preference under the Bankruptcy Act, the person receiving the payment, or to be benefited by it, must have had reasonable cause to believe that the debtor was at the time insolvent and that the payment would effect a preference; and insolvency under the act means something more than that the debtor was financially embarrassed and hard pressed by his creditors. This condition may exist, and the debtor still be solvent, so that if the executor, who received payment, simply knew that the debtor said that he was having difficulty in financing his firm, it would not taken alone be reasonable cause to believe him insolvent, especially in view of the fact that he had made the same remark a year before, and had thereafter told him that he had "financed" and was "all right again." The law is well established that, even if the creditor entertains doubts concerning the solvency of the debtor, it is not enough. He must have a knowledge of such facts as will carry him beyond this and furnish a reasonable ground to believe that the payment will give him preference over other creditors.

The fact that other creditors as a result must share with the estate of Hamilton II. Salmon in the assets of the bankrupt is no injustice to them. Their claims and the claim of the estate are alike the honest debts of the bankrupt, and the moral obligation is the same as respects each, and it is a maxim of equity that equality is equity.

The order is reversed, and the District Court is directed to reinstate the expunged claim.