KELLY ASPHALT BLOCK COMPANY, Respondent, *v.* BROOKLYN ALCATRAZ ASPHALT COMPANY, Appellant.

Second Department, February 27, 1920.

Limitation of actions — action by corporation to recover moneys paid by its president on claims alleged to have been barred — open, mutual and current account exhibiting reciprocal demands — acknowledgment of debt — resolution of board of directors authorizing president to pay bills — Statute of Limitations not available to enforce return of moneys paid in good faith.

In an action to recover for moneys had and received based on the ground that the plaintiff's president had, without authority, paid bills owing to the defendant which were at the time of payment barred by the Statute of

Limitations, it appeared that the plaintiff's president paid to the defendant a lump sum covering the claims alleged to have been barred and others which were concededly enforcible, and that said payment was made under the authority of a resolution duly adopted by the board of directors of the plaintiff directing its president to " pay the bills " of the corporation without specifying any particular bill or limiting the power of the president to pay them.

*Held,* on all the evidence, that at the time of the aforesaid payment there was in existence an open, mutual and current account between the plaintiff and defendant exhibiting reciprocal demands;

That the resolution of the board of directors of plaintiff granting authority to its president to pay the bills of the corporation, followed by the payments made by him, including the payments to defendant on account of the conceded indebtedness, was an acknowledgment of the debt which barred the plea of the Statute of Limitations;

That the plaintiff cannot avail itself of the Statute of Limitations to sustain the cause of action asserted in the complaint.

The Statute of Limitations may not be invoked and used to enforce the return of moneys paid in good faith to discharge a debt honestly due.

The directors of a corporation have power to waive a Statute of Limitations as against a debt justly due and owing.

APPEAL by the defendant, Brooklyn Alcatraz Asphalt Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 10th day of June, 1919, upon the report of a referee appointed to hear and determine the issues.

*Abram J. Rose [Alfred C. Petté* and *Philip M. Brett* with him on the brief], for the appellant.

*Edward M. Grout [Paul Grout* with him on the brief], for the respondent.

KELLY, J.:

In this action to recover moneys had and received, the plaintiff alleges that on June 11, 1914, when Kelly, the president of the plaintiff corporation, made its check to defendant's order for $36,207.68, there was due to defendant from the plaintiff the sum of $9,149.50 " and no more," and the demand is for judgment for the alleged excess payment, $27,058.18. The defendant answering admits that plaintiff owed $9,149.50 as alleged in the complaint, but denies the allegation that the sum mentioned represented the debt due defendant. Upon

the trial the plaintiff conceded that on the date of the payment there were additional sums due to defendant properly chargeable against the payment made, and the referee has found that defendant is entitled to an allowance of $12,865.59 with interest. And in addition to this debt so found due to defendant, the referee finds that at the time of the payment the plaintiff owed the defendant $5,000 with interest, aggregating $6,948.33, for moneys advanced in 1907 to pay a bill rendered by plaintiff's counsel for services in obtaining payment of money recovered for plaintiff from the city of New York, and also $9,257.14 with interest, aggregating $14,355.81, for work done and material furnished plaintiff by defendant in the years 1906 and 1907. But the referee has sustained plaintiff's contention that these two last items of indebtedness cannot be allowed defendant because the claims are barred by the Statute of Limitations. (Code Civ. Proc. § 382.) We think the learned referee erred in disallowing the two claims mentioned. The action is for money had and received. While the plaintiff alleges that the payment made by its president, Kelly, to the defendant was without its authority, there is no allegation or finding of fraud or wrongdoing, except the charge that the payment was made without authority from plaintiff. But the evidence shows and the referee has found that the plaintiff's board of directors representing the entire stock ownership, Kelly one-half and the Monahan interest one-half, passed a resolution agreed to by both interests, by which the money recovered by plaintiff from the Barber Company after protracted litigation, was turned over to Kelly to " pay the bills " of the plaintiff corporation without specifying any particular bill or limiting Kelly's power to pay them. Kelly, who was the financial backer of both corporations, owning one-half of plaintiff's stock and the whole of the stock of defendant, paid to the latter company the moneys advanced by defendant in 1906–1907 for plaintiff's benefit at a time when plaintiff was without funds to carry out its contracts. The moneys so advanced were on account of the identical public contract involved in the litigation with the Barber Company. During the intervening years while this action for damages against the Barber Company was pending, the plaintiff corporation had been without means and was unable to pay its bills. When the money was

finally collected the bills were paid. The money was turned over to Kelly under the resolution of plaintiff's board of directors, " the same as the Treasurer to pay the bills of the Kelly Company." The referee finds that the plaintiff's treasurer did not know of the payment made to defendant at the time it was made. But he refused to find that the other officers and directors of the plaintiff had no knowledge of the payment. The evidence shows that if the treasurer did not know of the payment to defendant at the time of the payment, he knew of it immediately after it was made, and the referee has so found. The fact that the payment made by Kelly, plaintiff's president, was to the defendant corporation in which he owned or controlled all of the stock has no significance because the fact of his interest and ownership in both corporations was known to every one, and the plaintiff availed itself of his interest in defendant in obtaining money to save itself in 1906–1907. The Monahans, father and son, knew of Kelly's payment of the money claimed by defendant, and obtained from defendant payment of money due them or for their account. This action was not commenced until after Kelly's death in November, 1917. The action, therefore, is not in tort or for fraud or wrongful taking of money. Kelly's possession of the money was lawful and expressly authorized by plaintiff's board of directors. The payment to defendant was an accomplished fact in 1914 when it was made, a payment made to pay plaintiff's bills which the referee found were owing and unpaid to the defendant, the defendant had received the money and applied it to payment of these debts when in 1917 the plaintiff commenced this action. It is essentially an action for money had and received. Notwithstanding that it is an action at law, it depends upon general principles of equity for the maintenance of plaintiff's claim to the money. The Court of Appeals says: " It is the most favorable way in which a defendant can be sued; he can be liable no further than the money he has received, and against that he may go into every equitable defense upon the general issue; he may claim every equitable allowance, * * * in short he may defend himself by every thing which shows that the plaintiff *ex æquo et bono* is not entitled to the whole of his demand

or any part of it." (*Chapman* v. *Forbes*, 123 N. Y. 532, 536.) But defendant, summoned to answer plaintiff's complaint that at the date of the receipt of the money there was due it $9,149.50 " and no more," is compelled by the judgment appealed from to return to plaintiff some $21,000 received by defendant on account of a debt actually unpaid, because the plaintiff asserts the Statute of Limitations as a bar to defendant's retention of the money paid to it. This seems inequitable and unjust. The Statute of Limitations may not be invoked and used by the plaintiff to enforce the return of moneys paid in good faith to discharge a debt honestly due.

Such procedure is opposed to fundamental principles of equity and fair dealing. The money was due and owing and the referee has so found. The Statute of Limitations did not pay the debt. The payment of $36,207.68, made by plaintiff to defendant in 1914, was in excess of the sum of $9,149.50 conceded to be due in the complaint; it was in excess of the sum of $12,865.59 conceded by plaintiff to be due at the trial; the referee finds that it was in excess of any single item of the indebtedness. It was not made to discharge any one of these items; it was made on account of the whole indebtedness. The resolution of plaintiff's board of directors authorized the president to pay the bills of the company without specifying any particular bill, or limiting his power to pay debts honestly due. It would seem that the payment thus made was an acknowledgment of the entire debt, which in 1914 took the entire account out of any Statute of Limitations. (Code Civ. Proc. § 395; *Raux* v. *Brand*, 90 N. Y. 309; *Bowe* v. *Gano*, 9 Hun, 6.) Prior to 1906, when the defendant came to the rescue of plaintiff and took upon itself the performance of plaintiff's contract with the city, because the plaintiff was unable to perform it, the two companies had mutual transactions and exchanged mutual credits. The referee has so found. But he finds that there were no mutual and current accounts exhibiting reciprocal demands after 1907, and refused to find that reciprocal demands existed up to the date of the payment in 1914. These last conclusions of the referee seem to be contrary to the evidence. The debt of the plaintiff to defendant aggregating $12,865.59 still existed, as found by the referee. The stock ownership continued unchanged in Kelly and Monahan.

According to plaintiff, the money concededly due to defendant was practically a debt due to Kelly, who owned all of defendant's stock. Kelly was at all times the president of the plaintiff and the man in charge of its affairs. It is impossible to differentiate between the debt conceded by the plaintiff and found by the referee and the debt for moneys advanced to enable plaintiff to perform its obligations and to pay its lawyers' bills for services connected with this identical city contract. The plaintiff company met with disaster in the performance of the city contract in 1906, due largely, as it appears, to the failure of the Barber Company to supply it with asphalt blocks suitable for the work. The city refused to pay the balance due plaintiff and refused to accept its work. Plaintiff had no funds with which to go on. It had the claim for damages against the Barber Company, but that could only be recovered after long drawn out litigation. Kelly with his defendant company stepped into the breach and completed the city contract, at the same time instituting the action against the Barber Company to recover damages. This action dragged on until 1914, but at all times Kelly was the president of the plaintiff company and in control of the litigation. If there was a cessation in reciprocal demands and credits during the pendency of this litigation, it was because plaintiff's money was tied up in the Barber lawsuit. The demands of the defendant, the credits due to defendant continued, the debts were never paid, as found by the referee, until 1914, when plaintiff received the proceeds of the litigation and authorized Kelly to pay the bills. The learned referee says in his opinion that plaintiff's board of directors, who it will be remembered were actually Kelly and Monahan, had no power in 1914 to pay " outlawed debts." But the debt due for labor and materials furnished and for money advanced for the lawyers' bill was no more outlawed than the conceded balance of the obligation. And the directors of a corporation have power to waive a Statute of Limitations as against a debt justly due and owing. Mr. Cook, in his work on Corporations, discusses this question of the power and discretion of directors. He says: " The judgment of the directors may, in the opinion of a stockholder, be erroneous, and yet it cannot be controlled or changed by the stockholders except by refusing to re-elect

the directors to office. The stockholder cannot go into court and attempt to change the policy of the directors in the management of the suit. A stockholder cannot control the discretion of directors as to whether to bring a suit or not." (3 Cook Corp. [7th ed.] p. 2746, chap. XLV, § 750.) Of course, he is referring to honest business dealings, and in the case at bar the referee has found that these debts were honest debts of the Kelly Company. And he says: " These principles of law follow necessarily from the fact that the management and policy of the corporation are determined and controlled by the directors and not by the stockholders. The only cases wherein the stockholders may interfere are cases where the directors are guilty of fraud, *ultra vires* acts or gross negligence in protecting the corporate interests. ' There may be claims against directors; there may be claims against officers; there may be claims against debtors; there may be a variety of things which a company may well be entitled to complain of, but which, as a matter of good sense, they do not think it right to make the subject of litigation; and it is the company, as a company, which has to determine whether it will make anything that is wrong to the company a subject-matter of litigation, or whether it will take steps itself to prevent the wrong from being done.' " (Citing *MacDougall* v. *Gardiner*, L. R. 1 Ch. Div. 13 [1875]; note to *Bissit* v. *Kentucky River Navigation Co.*, [U. S. Cir. Ct. Dist. Ky.] 15 Fed. Rep. 360, in which many cases are collated.)

The referee has found that in 1914, at the date of the resolution authorizing Kelly to pay the bills, the directors knew of the payments which defendant had made in 1907 for work and materials on plaintiff's contract and for the lawyers' bill, and that the resolution was known to and acquiesced in by the stockholders whose shares constituted all of the outstanding stock of said company on said date (*i. e.*, the date of the resolution), and while he finds that Kelly drew the check for the $36,207.68 without the knowledge of plaintiff's treasurer, the younger Monahan, he also finds that Monahan knew of the payment in June, 1914, after the check was drawn. The evidence shows not only that the younger Monahan knew it, but on the strength of the payment he obtained money from Kelly to pay claims which he himself had for back salary

against the plaintiff, and his father obtained payment of past due bills, all of which are conceded by the plaintiff here, so far as appears from the evidence.   No one found fault with Kelly's action in paying the money until he was dead and buried and some three years after.   He remained president of the plaintiff company and, with his son-in-law, owner or in control of more than one-half of its stock until his death. The learned counsel for the respondent says in his points: " The defendant here is seeking to justify its illegal, unauthorized and wrongful receipt and retention of our money, by the defence of outlawed claims."   But the use of adjectives and invective cannot change the facts.   The defendant corporation is brought into court upon a complaint charging that it has in its possession money belonging to the plaintiff in excess of the debt due.   The defendant is not seeking the money.   It had been paid the cash three years before the action was commenced.   The defendant denies that it has in its possession money belonging to plaintiff; it denies that the amount stated in the complaint was the true indebtedness of plaintiff at the date of the payment, and the referee has found that plaintiff has not correctly stated the debt due. He has found indebtedness existing in June, 1914, which aggregates, with interest, some $35,000, but as to $21,000 of this amount, he finds that defendant must return it under the plaintiff's insistence upon the Statute of Limitations.

In *House* v. *Carr* (185 N. Y. 453), CULLEN, Ch. J., says (at p. 458): " It must be borne in mind that the Statute of Limitations in this State never pays or discharges a debt, but only affects the remedy.   It would be within the constitutional power of the Legislature to repeal the Statute of Limitations and revive claims, the enforcement of which have been barred by the statute for a generation.   (*Campbell* v. *Holt*, 115 U. S. 620.)   Therefore, though the statute may have barred one remedy on the debt, if there be another remedy not affected by the statute, or one to which a different limitation applies, a creditor may enforce his claim through that remedy." (Citing *Fanning* v. *Dunham*, 5 Johns. Ch. 122, KENT, Ch.) And in the same case, in Judge VANN's dissenting opinion (at p. 460) we find the following language which seems applicable in the case at bar: " It is a general principle that the Statute

of Limitations may be used as a shield but not as a sword. The party attacked may use it to defend himself, but he cannot use it for aggressive action or as the means of getting property from the other party. Courts of equity, under ordinary circumstances, do not open their doors to a plaintiff who can produce no evidence in support of his claim for affirmative relief except the lapse of time and the Statute of Limitations." And the Commission of Appeals said through REYNOLDS, C., in *Johnson* v. *Albany & Susquehanna R. R. Co.* (54 N. Y. 416, 427): "At all events, it is not too much to say that a party who claims to have paid a debt by a successful plea of the Statute of Limitations, and seeks an affirmative remedy on the ground of such a fortunate venture, is not to be regarded as the especial favorite of a court of equity."

The plaintiff, respondent, contends that the defendant is seeking to do what is prohibited in section 397 of the Code of Civil Procedure, which provides: "A cause of action, upon which an action cannot be maintained, as prescribed in this title, cannot be effectually interposed as a defence or counterclaim."

The defendant is not asserting any *cause of action* as a defense or counterclaim. The burden of proof is upon the plaintiff to prove that defendant is not entitled to retain the moneys paid under resolution of the plaintiff's board of directors. The *defendant* is not seeking affirmative relief. It is already in possession of the money. The plaintiff is the attacking party. The defendant's right to retain the money is established except for the fact that the referee *on plaintiff's insistence* uses the Statute of Limitations to take *from defendant* money which has already been paid to it.

But this is contrary to the well-established doctrine that the Statute of Limitations may be used as a shield but not as a sword, and while the learned counsel for respondent refers to this principle as " picturesque dictum," it is well established in the jurisprudence of this State. The case of the defendant here is stronger than any of the cases cited, because the whole course of business between these two corporations, their stockholders, directors and officers, and the facts relating to the application of this money recovered after years of litigation to make good the loss sustained years before, makes

the judgment recovered by the plaintiff contrary to common honesty and fair dealing.

These considerations lead to the following conclusions:

1. The referee erred in refusing to find that on June 11, 1914, there was in existence an open, mutual and current account between the plaintiff and defendant exhibiting reciprocal demands.

2. The resolution of the board of directors of plaintiff in 1914 granting authority to the president, Kelly, to pay the bills of the company, followed by the payments made by him, including the payments to defendant on account of the conceded indebtedness found by the referee, was an acknowledgment of the debt which barred the plea of the Statute of Limitations.

3. The plaintiff cannot avail itself of the Statute of Limitations to sustain the cause of action asserted in the complaint.

The judgment is, therefore, modified by deducting therefrom the amounts paid by defendant to counsel and for work and labor furnished to plaintiff as found by the referee in his findings of fact Nos. 58 to 63 inclusive, with interest upon such payments. This court finds as matter of law that defendant's right to these moneys was not barred by the Statute of Limitations; and as so modified, the judgment is affirmed, without costs of this appeal. The referee's findings of fact and conclusions of law are modified in accordance with this decision.

Present — MILLS, RICH, PUTNAM, KELLY and JAYCOX, JJ.

Judgment modified in accordance with opinion, and as modified unanimously affirmed, without costs of this appeal. Settle order upon notice.