## In re GERMAN–AMERICAN IMPROVEMENT CO.

### DOSCHER v. GARVIN et al.

(Circuit Court of Appeals, Second Circuit. November 3, 1924.)

No. 40.

**1. Bankruptcy ⚖══339—Statute of limitations available.**

Statute of limitations may be interposed against allowance of claim in bankruptcy.

**2. Bankruptcy ⚖══314(4)—Statute of limitations of state governs in federal bankruptcy proceedings.**

Statute of limitations of the state in which is held the District Court in which bankruptcy proceedings are instituted governs in the allowance of claims.

**3. Bankruptcy ⚖══314(4)—Limitations unaffected by unlawful payment by bankrupt.**

A payment by bankrupt, if made unlawfully, cannot take the debt out of the statute of limitations.

**4. Bankruptcy** ⬡314(4)—**Limitations unaffected by payment by corporation, while insolvent, to stockholders in violation of statute.**

Payment to stockholders by bankrupt corporation, while insolvent, being, under Stock Corporation Law N. Y. § 15 a, b, c, unlawful and "void," and so of no effect, did not take the debt out of the statute of limitations.

Appeal from the District Court of the United States for the Eastern District of New York.

In the matter of the German-American Improvement Company, bankrupt. Order of referee disallowing the claim of Henry Doscher, as trustee, on objection of Oliver C. Garvin, trustee in bankruptcy, and another, was affirmed by the District Judge (2 F.[2d] 991), and claimant appeals. Affirmed.

This case comes here on appeal from the United States District Court for the Eastern District of New York. The District Court has disallowed the claim of the appellant against the bankrupt in the sum of $176,277.26.

The German-American Improvement Company filed a petition in bankruptcy praying that it be adjudicated a bankrupt within the purview of the Bankruptcy Law. This was filed on March 4, 1921, and thereafter the said petitioner was adjudicated a bankrupt and Oliver C. Garvin was appointed trustee.

The schedules filed showed that the company had debts amounting to $207,103.33 and assets amounting to $74,651.50. Among the claims included in the schedule was one for Henry Doscher, trustee, based upon a promissory note dated April 6, 1911, for $130,190 and interest on said note amounting to $46,087.26, the total amount of the claim being $176,277.26.

The trustee of the bankrupt and Alfred Hoffman, as trustee, under a will objected to the allowance of the claim. The matter was referred to the referee in bankruptcy, and after taking testimony he disallowed the claim. A petition to review the action of the referee having been filed and a hearing had thereon, the district judge affirmed the order entered by the referee. Thereupon this appeal was taken.

Henry F. Cochrane, of Brooklyn, N. Y., for appellant.

Samuel C. Duberstein, of New York City, for respondent-trustee.

Engelhard, Pollak, Pitcher & Stern, of New York City (Samuel C. Duberstein and George H. Engelhard, both of New York City, of counsel), for Alfred Hoffman, as trustee under the will of Magdalena Brommer.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). The claim which has been disallowed consists of a promissory note which may be found in the margin.[1] The note, it appears, was given as a renewal of a note executed by the company under date of May 1, 1901, to Claus Doscher, trustee, for $86,744.28. The proof of claim does not set forth the consideration for the note.

The German-American Improvement Company, the bankrupt herein, was organized in 1891 as a land company with a paid in capital of $300,000. It acquired a large tract of land with a view to its development into residential sites. It laid out streets which it paved, flagged, and curbed. It installed a complete sewer system and a water plant for the purpose of supplying water to those who would subsequently buy and build on the land which was designated to be developed. The first intention was to improve the property and to sell off the houses after the improvements were completed. This proved to be a disappointing proposition with the result that, after building about 300 houses, the company stopped building and confined itself to the selling of lots to those who would improve them.

All of the stockholders, except two, were men of large means who advanced the company money from time to time in the work of development until upwards of $2,000,000 had been so expended. It thus came about that in the year 1901 the company owed its officers and stockholders a large amount of money. Matters had not progressed as favorably as had been anticipated and sales had been infrequent. The company in 1901 considered it for the best interests of all concerned to divide up all of the unsold property of the company among its stockholders in proportion to the amount of stock which each held.

In that year all the stockholders filed with the board of trustees a consent and request,

---

[1] "$130,190/00.      Brooklyn, N. Y.,
"April 6, 1911.
"On demand after date we promise to pay to the order of Henry Doscher, trustee, one hundred and thirty thousand one hundred and ninety $00/100 dollars at 2224 Pitkin avenue, Brooklyn, N. Y. Value received.
"No. ———. Due ———.
"The German American Imp. Co.,
"Charles Doscher, Treas."

under their hands and seals and duly acknowledged, that the corporation grant and convey unto the said shareholders all of its property in the ratio of their respective holdings, and requested the board to adopt a suitable resolution to carry into effect the said grant and conveyance.

The board thereupon, on June 4, 1901, adopted resolutions, which, after reciting the action, consent, and desires of the stockholders, read as follows: ·

"Resolved, that this corporation do grant and convey unto its shareholders respectively in the ratio of their respective holdings of stock all of its real property, except the water plant of this·company, and the land constituting the streets in the property of said company, together with all sewerage, water, and other pipes contained beneath the surface of said streets, according to the plan and scheme of distribution of said stock heretofore submitted to and approved by the said stockholders;. and

"Resolved, that the president and treasurer of this company be and they hereby are authorized and directed to make, execute, acknowledge and deliver in the name of this corporation any and all necessary and proper instruments, deeds and conveyances, to carry into effect the terms and provisions of this resolution, and to do any and all other acts which may be necessary and proper for that purpose."

The record discloses a conflict in the evidence as to the circumstances under which the original note of May 1, 1901, was given.

It is the contention of the appellant that the stockholders, who had previously loaned to the company large sums of money, declined to advance any further sum except upon the company's agreement to pay them the amount so advanced as a loan. This it is said the company agreed to do, and that in pursuance of this agreement Claus Doscher, as trustee, loaned the company $86,744.28, which was contributed by the stockholders according to their respective holdings—being paid by them to Doscher, as trustee, who turned the same over to the company and took the note of May 1, 1901, as evidence of the transaction. And there is some testimony to support the contention that it was expected that the money thus contributed and paid over was to be repaid out of the money that was to be realized from the sale of the water plants and the streets if the city ultimately took them over; the said water plants and streets being reserved when the remainder of the real property was distributed among the stockholders.

It is, on the other hand, contended by the appellees that the stockholders had come to the conclusion before the note was given that the company could not successfully continue its business. It was not succeeding in making sales of its real estate, and was without funds to pay its debts, mortgage liens, and taxes. It was being threatened with foreclosure suits, and the stockholders were unwilling longer to continue advancing moneys to the company. In this situation the suggestion was made, in order to protect the properties of the company against foreclosure and sale and to clear off tax arrearages, that the stockholders should be assessed according to their respective holdings and previous advancements, and that the money thus raised should be used to clear off indebtedness. That being done, the understanding was that the real property should be distributed among the stockholders in proportion to their stock holdings and the amount that they had advanced to the company; and that the company's indebtedness to the stockholders should then be wiped out by the conveyance of the land to them after the same had been freed from the incumbrance of arrearages·in taxes and interest; that the note of May 1, 1901, was taken merely as temporary evidence of the assessment payments.until the real property could be actually distributed, when it was to be considered as discharged and wiped out like all the other claims of the stockholders.

If the contention of the appellants be correct, the note of May 1, 1901, was unpaid when the note of April 6, 1911, was given in its stead. If the contention of the appellee be correct, the note of May 1, 1901, was extinguished by the distribution of the property, among the stockholders pursuant to the action of the board heretofore recited. And, if that be the case, the renewal note of August 6, 1911, which is put forward as a claim against the bankrupt, was without consideration and void.

The referee disallowed the claim, and found:

"(1) That the claim was barred by the statute of limitations; that the bar of the statute was not raised by two interest payments made during the six years preceding the filing of the bankruptcy petition, because those payments were made while the company was insolvent, and constituted preferences unlawful under the New York Corporation Law, the second one also under the Bankruptcy Act.

"(2) That the claim on the note had been extinguished in 1901 when the corporation

distributed practically all its assets among the same persons, its then stockholders, who are now the beneficiaries of the note."

The district judge on petition to review concurred in the referee's view as to the statute of limitations, and denied the petition to review.

If the note is barred by the statute of limitations, it really becomes unnecessary to consider the conflicting evidence presented and which goes to the validity or invalidity of the note at the time it was given, and whether or not it was supported by any consideration.

The referee, speaking of the original note in his report, said:

"I am forced to conclude that under the plan of distribution of the bankrupt's realty amongst the stockholders this $86,744.28 was paid in for the purpose of paying off the interest on mortgages and taxes and other charges, and thereby to prevent foreclosure of the mortgage covering the same, and that all advances, including the $86,744.28 made by the stockholders were all extinguished upon the carrying out of the plan of the distribution of the realty to the stockholders. The only explanation that I can find for the issuance of the note is that it was intended to serve as evidence of an indebtedness during the time between the payment of the advances which made up the amount of the face of the note and the subsequent actual distribution of the properties amongst the stockholders. It is inconceivable that, upon distribution of the assets, the plan or scope of such adjustment and distribution should not include the discharge of the various personal obligations due to the stockholders from the corporation. The previous advances were considered loans. The contributions aggregating the sum of $86,744.28 were considered assessments by the stockholders themselves. Yet these stockholders now attempt to assert that the 'loans' are no longer obligations of the company while the 'assessments' emerge as obligations which they seek to fasten on the bankrupt corporation.

"During the lifetime of Claus Doscher no attempt was ever made to pay interest on this alleged indebtedness, but the moment he died and this note was discovered amongst his effects the remaining stockholders and representatives of the Claus Doscher estate misunderstood the purpose of this note, and, in order to find some reason for its existence, began to treat it as a legitimate, outstanding, and unpaid indebtedness. Upon the same fallacious reasoning payments were made on account of principal and interest in direct violation of the intention of the stockholders at the time of the distribution of the properties and in violation of the rights of the estate of Magdalena Brommer which eventually obtained a judgment against the bankrupt corporation herein."

When the matter came into the District Court the district judge confirmed the action of the referee in disallowing the claim, but in doing so he stated that it was unnecessary for him to determine whether the note represented a valid loan in view of the other facts which he found. It is evident, however, that he was not satisfied that the note was invalid. He said: "I assume that the note represents a valid loan, as I can see nothing that prevents such assumption." Assuming the note to be valid, he disposed of the question by holding that the payments of interest on the renewal note were insufficient to remove the bar of the statute of limitations, and on that ground he disallowed the claim.

When the case reached this court on the appeal it was argued, not only that the statute was a bar to the note, but that the note itself was void for want of consideration, as the original note had been extinguished by the distribution of the real property to the stockholders.

The majority of this court prefer to decide the case on the point upon which the district judge decided it. If he was right in holding the note barred by the statute, it becomes unnecessary for us to inquire whether the note is or is not a valid note. The evidence as to its validity is very conflicting and more or less unsatisfactory. As the law seems clear to the majority of the court that the note is barred by the statute, we prefer to base our decision upon that ground.

[1-4] So far as the statute of limitations is concerned the following rules are applicable:

The statute of limitations may be interposed against the allowance of a claim in bankruptcy. In re Wooten (D. C.) 118 F. 670; In re Lipman (D. C.) 94 F. 353; Hargadine-McKittrick Co. v. Hudson, 122 F. 232, 58 C. C. A. 596; In re Kuffler (D. C.) 155 F. 1018; Remington on Bankruptcy (3d Ed.) vol. 2, § 958.

The statute of the state in which the District Court is held and in which the proceedings in bankruptcy are instituted governs in the allowance of claims. In re Resler (D. C.) 95 F. 804; Hargadine-McKittrick Dry Goods Co. v. Hudson, 122 F. 232, 58 C. C. A. 596; In re Stoddard Bros. Lumber Co. (D. C.) 169 F. 190.

A payment which otherwise would take a debt out of the operation of the statute cannot be given that effect if it was made unlawfully. It cannot operate to renew the debt. And it leaves the whole matter as if no payment had been made. In re Banks (D. C.) 207 F. 662, 665. The above principle applies to any payment which is unlawful and void.

The Stock Corporation Law of the state of New York (Consol. Laws, c. 59, as reenacted by Laws 1923, c. 787) in section 15 contains the following provisions:

"(a) No corporation which shall have refused to pay any of its notes or other obligations, when due, in lawful money of the United States, nor any of its officers or directors, shall transfer any of its property to any of its officers, directors or stockholders, directly or indirectly, for the payment of any debt, or upon any other consideration than the full value of the property paid in cash.

"(b) No conveyance, assignment or transfer of any property of any such corporation * * * or stockholder thereof, nor any payment made, judgment suffered, lien created or security given by it or by any officer, director or stockholder when the corporation is insolvent or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation, shall be valid. * * *

"(c) Every transfer or assignment or other act done in violation of the foregoing provisions of this section shall be void."

The payments made on the note and which are relied upon to take it out of the operation of the statute of limitations—the payment on April 8, 1919, and on November 5, 1920—were each made in violation of provisions (a) and (b) of the Stock Corporation Law. And as these payments were in violation of the provisions cited they were void under provision (c).

The word "void" is defined in Bouvier's Law Dictionary as "that which has no force or effect." To hold that a void payment may take a note out of the statute of limitations is to give to the payment some force and effect. And the majority of the court hold that the payments of interest made on the note herein involved cannot take the note out of the statute of limitations. We are aware that that statute does not destroy the debt but simply takes away the remedy, and that the bar of the statute is merely a personal privilege which ordinarily the debtor may waive or assert at his election. In re Salmon, 249 F. 300, 161 C. C. A. 308.

But when a statute declares, as does the New York statute, that certain payments shall be unlawful and void, and therefore without effect, the majority of the court are unable to say that the unlawful and void payments shall have effect to the extent of reviving the remedy.

In this connection attention is called to Clapp v. Hale, 112 Mass. 368, 17 Am. Rep. 111. The court in that case had under consideration a statute of Massachusetts which made payments on Sunday illegal. The court held that a payment made on Sunday would not have the effect of tolling the statute of limitations. The reason given was that a court will not assist either party to avoid or take advantage of an illegal act, but will leave both parties where it finds them. Such an act "cannot be made the foundation or support of any executory obligation to be judicially enforced." The court, speaking through Chief Justice Gray (afterwards Mr. Justice Gray of the Supreme Court), added:

"A delivery of goods or payment of money on the Lord's Day may vest the property therein, or extinguish an existing obligation, so far as the property or money has passed from one party to the other, but cannot be availed of for any other purpose. The courts will equally refuse to assist one party to recover back what he has thus paid or transferred; and the other party to deny that he has received it, or to assert any new rights by reason of such payment or transfer or in any degree founded thereon."

In Horn v. Dorchester, 199 Mass. 539, 85 N. E. 854, the court cites Clapp v. Hale, supra, and says: "Although performance on Sunday of a valid contract will not be treated as a nullity, it will not be given an independently affirmative effect beyond mere performance."

In Whitcher v. McConnell, 59 N. H. 470, part payment of a note was made on Sunday, was therefore illegal, and, being illegal, was not evidence from which a new promise could be inferred, citing Clapp v. Hale, supra.

In Dennis v. Sharman, 31 Ga. 607, the Supreme Court of Georgia, discussing the effect of payments made on Sunday, declared that, if "the payment on that day was in violation of, or prohibited by law, then all contracts, obligations, and promises, either express or implied, growing out of, or dependent on the act, is null and void, whether so declared to be by the law of which the act was in violation or not. This has been the uniform ruling of the courts, where the common law is of force, since

Drury v. Defontaine, 1 Taunt. 135." The courts of Massachusetts and of Georgia in the cases cited held that partial payments made on Sunday did not prevent the bar of the statute of limitations from attaching to the debt. This decision is referred to approvingly in Hill v. Wilker, 41 Ga. 449, 453, 5 Am. Rep. 540; Bass v. Irvin, 49 Ga. 437, 440.

In 25 Cyc. 1393, it is stated that "a part payment made on Sunday will not take a debt out of the operation of the statute."

It is proper to state that as respects the effect of the payments of interest on the notes Judge Hough prefers to express no opinion. He concurs, however, with the majority in holding that the decision below must be affirmed, but places his affirmance on the ground that the original note was paid and more than paid by the distribution of the company's property made in June, 1901. In his opinion the note did not represent "advances" made by the stockholders but "assessments" upon them. And, as there was no debt evidenced by the note of 1901, no debt was evidenced by the note of 1911.

The court is therefore unanimous in holding: Order affirmed.