**CENTRAL HANOVER BANK & TRUST CO. v. UNITED TRACTION CO. et al.**

**No. 142.**

Circuit Court of Appeals, Second Circuit.

Feb. 21, 1938.

52

Archibald L. Jackson, of New York City (Felix A. Fishman and Alfred W. Bressler, both of New York City, of counsel), for appellant.

Larkin, Rathbone & Perry, of New York City (A. M. Lewis and Frank H. Heiss, both of New York City, of counsel), for appellees.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

The claim of the appellant is based upon two promissory notes of the Union Traction Company payable upon demand with interest at 6 per cent. per annum. The first note, dated December 31, 1928, in the sum of $3,563,508.17, was payable to the order of Ellis L. Phillips and George W. Olmsted, and was by them endorsed without recourse and acquired by the appellant on November 1, 1929. The second note, dated December 1, 1929, in the sum of $198,503.21, was payable to the appellant. It represented interest accrued upon the first note. The face amount of these two notes, with interest thereon from December 1, 1929, to the date of the equity receivership, December 30, 1929, constitutes the appellant's claim. The claim was referred to a special master for investigation and report. He reported that the appellant was not a holder in due course of the principal note; that it was issued when the United Traction Company was insolvent to replace prior notes which were barred by the statute of limitations; and that it was subject to four defenses, namely, lack of consideration, duress in its execution, section 273 of the Debtor and Creditor Law of New York, Consol.Laws, c. 12, and section 15 of the New York Stock Corporation Law, Consol.Laws, c. 59. The interest note falling with the principal note, the master reported against allowance of any part of the claim. His report was confirmed by the District Court without opinion.

Since both parties concede that the interest note must stand or fall with the principal note, attention may be confined to the circumstances relative to the execution of the latter. For many years, the Delaware & Hudson Company had owned all the stock of the Union Traction Company (hereafter for brevity called the Company), and had been accustomed to make cash advances to it and take its demand notes to evidence the loans. The parent corporation never demanded payment of any said notes. On December 31, 1928, it held 50 such notes, against some of which the six-year statute of limitations had already run. On that date it transferred all said notes to Phillips and Olmsted, who on the same day acquired also the stock of the Company. The aggregate face amount of the notes so transferred was over $6,000,000, the accumulated interest on them was over $3,000,000, and, in addition, Phillips and Olmsted had a claim of some $400,000 for interest due on certain bonds of the Company held by them. On December 31, 1928, they made a settlement with the Company, acting through its officers. Phillips and Olmsted surrendered and canceled all of their claims against the Company aggregating $9,959,995.48, and in exchange received the new demand note for $3,563,508.17, upon which the appellant bases its present claim, and a transfer of property consisting of securities, evidences of indebtedness, and open accounts having a ledger value (marked down) of $6,396,487.-31, much of which property had apparently been held as collateral security for payment of the old notes. This settlement was ratified at a meeting of the directors of the Company held March 22, 1929, at which all the directors, including Mr. Olmsted, were present. Mr. Olmsted, however, did not vote on the resolution of ratification. On November 1, 1929, the new vote was transferred to the appellant, endorsed by the payees "without recourse." Nothing has been paid upon the principal of the note and no interest, except that for which the note of December 1, 1929, for $198,503.21 was given. Execution of the interest note was ratified at a director's meeting held December 27, 1929. The receivership suit was begun three days later. On the dates when the appellant acquired the principal note and the interest note, the same interests owned or controlled the stock of both the Company and the appellant. There was much testimony as to the financial condition of the Company. The special master found that it was insolvent on December 31, 1928.

The master reported that the appellant was not a holder in due course of the new note. The appellant disputes this finding; but in the view we take of the case it is unnecessary to decide the question. We shall assume that the note was open to the same defenses in the hands of the appellant as would have been available against the payees.

■ The main defense is lack of consideration. This is based upon the master's finding that the note was issued solely in consideration of the cancellation of notes against which the statute of limitations had run. It was the master's view that enforceable claims held by Phillips and Olmsted amounted to only $1,248,362.17. In our opinion, the master was in error as to the amount of indebtedness against which the statute had run. The two oldest notes were one, dated September 20, 1918, for nearly

$1,000,000, and another, dated September 23, 1918, for some $1,800,000. Each of these was executed by the vice-president of the Company and bore the corporate seal attested by its secretary. They recited the deposit of collateral and specified the terms upon which the security might be foreclosed. They were instruments affecting the company's property, and as such, under the by-laws, required sealing and attestation by the secretary. The seal is prima facie proof that it was attached by proper authority. Quackenboss v. Globe & R. F. Ins. Co., 177 N.Y. 71, 72, 69 N.E. 223. It is true that the mere presence of a corporate seal upon an instrument in the form of a promissory note, without proof that its officers intended to or did affix it, would not transform the note into a sealed instrument. Weeks v. Esler, 143 N.Y. 374, 38 N.E. 377. But the presence of the Company's seal upon its two notes of September, 1918, was not unexplained. The by-laws were introduced to prove that in all instruments affecting corporate property the seal was required to be affixed and attested by the secretary. The presumption is that the mandate of the by-laws was obeyed (see McClure v. Supreme Lodge, 41 App.Div. 131, 139, 59 N.Y.S. 764), and the notes in fact affected corporate property and bore the seal and the secretary's attestation. We conclude that these two notes were sealed instruments and that the twenty-year statute of limitations, Civil Practice Act N.Y. § 47, was applicable to them. Hence these notes and the interest accrued thereon should be added to the other admittedly enforceable obligations. This would bring the total amount to about $5,810,000. However, this is less than the ledger value of the property transferred to the Company and, therefore, would not have affected the master's conclusion that the new note lacked consideration, since he believed that the cancellation of the enforceable claims must be allocated as the consideration given by Phillips and Olmsted for the transfer of property. We find it very difficult to follow the reasoning by which the appellees seek to sustain such an allocation. There is no evidence that the parties intended any such allocation or gave any thought to the fact that the statute had run against some of the notes. Indeed, the inference that all the notes were treated alike may be clearly drawn from Exhibits 122 and 123. The statement there given lists on one side of the account the items of property to be transferred, totalling $6,-396,487.31, and on the other side of the account debts to be canceled in the same amount. Among such debts is an item for "Interest accrued and unpaid on December 31, 1928 on promissory notes of United Traction Company in favor of Ellis L. Phillips and George W. Olmsted $3,158,-325.06." This figure represents accrued interest on all the notes, not merely on the non-outlawed notes. Similarly, the item specifying the "Face amount of demand notes" to be canceled, namely $2,805,047.25, does not refer to particular notes, but is a figure selected to balance the account. The remainder of the Company's indebtedness was to be settled by the issuance of the new $3,563,508.17 note, which was stated to be "in renewal for the balance of said aggregate face amount of notes held by said parties amounting to $6,368,555.42."

The foregoing facts demonstrate to our satisfaction that no allocation was intended by the parties, and that none can properly be made by the court. Hence the settlement must be viewed as a single transaction in which the creditors gave up outlawed and nonoutlawed claims in exchange for a transfer of property and the issuance of a renewal note, the aggregate face value of what was given up being the same as the aggregate face value of what was received, taking the property transferred at its ledger value. Moreover, by canceling the old notes, the creditors surrendered their rights to collateral pledged by the two notes under seal not only as security for the indebtedness they represented but also "for any and all other debts or claims held against" the Company, "which may be outstanding and unpaid at any time." Nor can we see the materiality of Mr. Blasing's testimony that the Delaware & Hudson Company did not deliver the collateral to Phillips and Olmsted when the notes were assigned to them. The right to the collateral would pass to the holders of the notes, although it was not delivered. It may also be noted that the property transferred by the Company to Phillips and Olmsted was largely the previously pledged collateral. That the Company's equity in the collateral had any value may well be doubted. No evidence was offered as to the value of the property transferred. Viewing the settlement as a unitary transaction, it cannot be said that the new note was supported by no consideration, nor by insufficient consider-

ation. Certainly the payees gave some present consideration for it. Where a promise is made in exchange for present as well as past consideration, the promise is supported by sufficient consideration and is obligatory. Sun Oil Co. v. Heller, 248 N.Y. 28, 161 N. E. 319; Am.L.Inst.Contracts. § 84(b); Williston, Contracts, Revised Ed., p. 469. Indeed, even without any present consideration, the old consideration is adequate to support a promise to pay a debt barred by the statute of limitations. Am.Law Institute, Contracts, § 86. We conclude that the defense of lack or inadequacy of consideration was not established.

 The appellees urge that the principal note was issued in fraud of creditors, and is void under section 273 of the New York Debtor and Creditor Law.[1] The master reported that the Company was insolvent on December 31, 1928, and, although the finding is disputed by the appellant, we shall assume it to be correct. The argument is that renewal of a barred debt is the incurring of an obligation without a fair consideration, and forbidden by the statute if the debtor is insolvent. To so construe the statute is to ignore all history. It has never been deemed a fraudulent conveyance to pay an honest debt or to perform an obligation which the obligor was under a moral duty to perform, although the debt or obligation was legally unenforceable because of some statutory provision. Del Valle v. Hyland, 76 Hun, 493, 27 N.Y.S. 1059, affirmed 148 N.Y. 751, 43 N.E. 986 (outlawed debt); McConnell v. Barber, 86 Hun, 360, 33 N.Y. S. 480 (outlawed debt); Wilson v. Russell, 13 Md. 494, 71 Am.Dec. 645 (debt discharged under insolvent laws); Livermore v. Northrup, 44 N.Y. 107 (oral promise within statute of frauds); Gardner v. Rowe, 2 Sim. & St. 346 (transfer to cestui of lease held under oral trust); Reinschmidt v. Hirsch, S.D., 275 N.W. 356 (transfer of land held on oral trust); Bump, Fraudulent Conv., 3d Ed. 223. Many later authorities are collected in the annotation, in 109 A.L.R. 1220. Nor has the waiver of the statute of limitations been treated by the courts as incurring a new obligation. The statute has been considered as merely suspending the creditor's remedy, not as extinguishing the debtor's obligation; hence, if he waives the statute, it is the old obligation that is enforced. Johnson v. Albany & Susquehanna R. R. Co., 54 N.Y. 416, 424, 13 Am.Rep. 607; House v. Carr, 185 N.Y. 453, 458, 6 L.R.A.,N.S., 510, 113 Am.St.Rep. 936, 7 Ann.Cas. 185; In re Salmon, 2 Cir., 249 F. 300. See Campbell v. Holt, 115 U.S. 620, 6 S.Ct. 209, 29 L.Ed. 483; 27 Yale L.J. 126. In our opinion, section 273 of the New York statute was not intended to abrogate these long-established legal principles. Indeed, section 272 expressly states that the satisfaction of an antecedent debt may serve as the "fair consideration" of the statute.

In the case of a solvent corporation it is clear that the directors have the power to revive a barred debt. Kelly Asphalt Block Co. v. Brooklyn, etc., Co., 190 App. Div. 750, 180 N.Y.S. 805, modified on other grounds, 232 N.Y. 304, 133 N.E. 899; Canal Bank & Trust Co. v. Bank of Ascension, 140 La. 465, 73 So. 269; Corbus v. Gold Mining Co., 187 U.S. 455, 463, 23 S.Ct. 157, 47 L.Ed. 256; City Savings Bank & Trust Co. v. Shreveport Brick Co., 172 La. 471, 134 So. 397; Union Oil Co. v. Purissima Hills Oil Co., 181 Cal. 479, 185 P. 381. It must be conceded that an insolvent individual has the power to revive barred debts so that they may share in the distribution of his estate along with unimpeachable claims. In re Salmon, supra. The appellees attempt to distinguish between an insolvent individual debtor and an insolvent corporate debtor. They urge that the assets of a corporation upon insolvency become "a trust fund" for its creditors. This is an alluring phrase often used in the cases without a precisely defined meaning. In no real sense are the assets of an insolvent debtor a trust fund for creditors; and this is as true of corporations as of individuals. Haight v. Smith, 178 Mich. 392, 144 N.W. 830, 19 A.L.R. 308; annotations, 19 A.L.R. 320, 62 A.L.R. 738.

 After insolvency, the corporation may continue to use its assets in its business, as may an individual debtor. Moreover, the holder of an outlawed debt is still regarded as a creditor; the defense that a debt is outlawed is treated as a personal privilege of the debtor to be exercised at his option. See 27 Yale L.J. 126. If an insolvent individual owes no duty to his

[1] "§ 273 *Conveyances by insolvent.* Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

other creditors to plead the statute of limitations against one subject to it, no reason is apparent why an insolvent corporation should be under such a duty. No case has been cited holding that it is. In our opinion there is no difference between individual and corporate debtors when the question is what constitutes a fraudulent conveyance. It is true that, after the assets of a debtor have come into the hands of a true fiduciary, as in the case of bankruptcy or death, the trustee or executor may not revive a debt already outlawed at the time of the debtor's bankruptcy or death. Butler v. Johnson, 111 N.Y. 204, 18 N.E. 643; House v. Peacock, 84 Conn. 54, 78 A. 723; McHugh v. Dowd's Estate, 86 Mich. 412, 49 N.W. 216. See American Woolen Co. v. Samuelsohn, 226 N.Y. 61, 123 N.E. 154; annotation L.R.A.1915B, 1016. But, as already pointed out, an insolvent debtor bears no such fiduciary relationship to creditors. We conclude, therefore, that the revival by a corporation of a barred debt is not a fraudulent conveyance, whether the corporation be solvent or insolvent, and is not forbidden by section 273.

In support of the argument that the directors of the Company after insolvency had no power to waive the statute of limitations, appellees cite Hein v. Gravelle Farmers' Elevator Co., 164 Wash. 309, 2 P.2d 741, 78 A.L.R. 631. That case cannot support appellees' position. The directors of an insolvent corporation authorized small payments to be made upon notes which had been barred by limitations. It was urged that those payments were effective to waive the statute of limitations. In the receivership proceedings of the corporation, in which creditors objected to the allowance of those notes, it was brought out that four of the five directors of the corporation were present and voted at the meeting at which the payments were authorized, and that, of those four, two were payees of the notes upon which the payments had been made. The court held that, because of the pecuniary interest of the two directors, those payments were not voluntary and were preferences which should be paid back to the corporation. That case does not stand for the proposition that the directors of an insolvent corporation are without power to waive the statute of limitations, but that payments which are voidable preferences and which therefore must be paid back cannot be effective to waive the bar of limita-

tions. The rationale of the Hein Case is not, as urged by appellees, that directors after insolvency owe fiduciary duties to the creditors of the corporation and must treat all creditors alike. The rationale is a much narrower one, applicable both to solvent and insolvent corporations: it is that directors may not exercise their powers for their own benefit at the expense of stockholders or creditors. Union Coal Company v. Wooley, 54 Okl. 391, 154 P. 62, 19 A.L.R. 312; Jackman v. Newbold, 8 Cir., 28 F.2d 107. No contention is made in the case at bar that the directors who ratified the execution of the note personally benefited from the transaction.

It is further asserted that issuance of the note was a preference and void under section 15 of the New York Stock Corporation Law. On December 31, 1928, the date of the issuance of the note, the relevant portions of that section were as follows:

"*Prohibited transfers to officers or stockholders.* No corporation which shall have refused to pay any of its notes or other obligations, when due, in lawful money of the United States, nor any of its officers or directors, shall transfer any of its property to any of its officers, directors or stockholders, directly or indirectly, for the payment of any debt, or upon any other consideration than the full value of the property paid in cash. No conveyance, assignment or transfer of any property of any such corporation by it or by any officer, director or stockholder thereof, nor any payment made, judgment suffered, lien created or security given by it or by any officer, director or stockholder when the corporation is insolvent or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation, shall be valid. * * * Every transfer or assignment or other act done in violation of the foregoing provisions of this section shall be void."

A mere reading of the provisions of section 15 shows that the note here at issue cannot fall within its ban. The issuance of an unsecured note clearly is not a transfer of property, nor could it be considered a conveyance, a payment, or the creation of a lien. While the issuance of the note of December 31, 1928, cannot fall within the prohibition of section 15, the situation with respect to the transfer by the Company of securities, notes, and open accounts in the

settlement of the same date is somewhat different, for that transfer was clearly a transfer of property. But no attack has been made upon the transfer of the property conveyed in settlement. Had there been such an attack, with no evidence in the record as to the value of the collateral held for the notes or of other property transferred in the settlement, it would seem to be impossible to find that the transferees received for their cancelled debts more than creditors may get on liquidation or that there was any intent to prefer them. But, even if the transfer could be set -aside, 'it is not apparent how that could invalidate the note sued upon for no voidable payment was made upon it. Cf. In re German-American Improvement Co., 2 Cir., 3 F.2d 572.

Finally, it is urged that the note executed by the vice-president was ratified by the directors under duress. At the meeting all nine directors were present, and all voted to ratify the settlement except Mr. Olmsted, who abstained from voting because of his interest as a party to the settlement. The eight voting directors were employees of the Delaware & Hudson Company, and *testimony was given that they had always* followed that corporation's instructions because it owned all the stock. The argument is that they would also follow the instructions of Phillips and Olmsted because they now owned all the stock. There is no evidence that any instructions were given the directors by the stockholders. So far. as appears, Mr. Olmsted said nothing at the meeting. But in any event, as the court said in Tierney v. J. C. Dowd & Co., 238 N. Y. 282, 286, 144 N.E. 583, 584: "The control of the corporation by the defendant through its stock ownership and the election of the defendant's own employees as a majority of the board of directors does not itself render the corporate transfer of property to the defendant illegal." See, also, Continental Securities Co. v. Belmont, 83 Misc. 340, 352, 144 N.Y.S. 801, affirmed 168 App.Div. 483, 154 N.Y.S. 54, affirmed 222 N.Y. 673, 119 N.E. 1036; Chestnut St. Trust & Savings Fund Co. v. Record Pub.

Co., 227 Pa. 235, 75 A. 1067, 136 Am.St.Rep. 874. The finding of duress cannot be sustained.

For the foregoing reasons we conclude that none of the defenses set forth against the note was established. The appellant's claim should have been allowed. The order is reversed and the cause remanded, with directions to allow it.

L. HAND, Circuit Judge (concurring).

I agree that, as the law stands, we cannot hold that the revival by an insolvent of a debt barred by the statute of limitations is a fraudulent conveyance. That result follows from the curious but ancient notion that the debt is not discharged, but only the remedy barred; I suppose it would not follow where the statute of limitations reads otherwise. Ordinarily the consequences of that doctrine are just enough; there is no reason why a man should not revive a debt by promising to pay it after it is outlawed, because there is no reason why he should not make himself liable by a bare promise anyway. But the situation is wholly different when the debtor is insolvent, and when he should no longer meddle with his property except to protect his creditors. The excuse for applying it then is that he may always pay an "honest debt", and so he may, when it is he who pays it; but, if he pays while he is insolvent, he dips his hand in his creditors' pockets in favor of one who, whatever his phantom "rights", has by his own conduct forfeited all power to share in the common pot. How such a revival differs from a voluntary gift I cannot understand; if there is to be a revival, it ought to be within the power of the other creditors alone. Indeed, the ghostly nature of the whole doctrine is betrayed by that exception under which the debt is not revived when the acknowledgment consists of a preferential payment. In re German-American Improvement Co., 2 Cir., 3 F.2d 572. Surely, the fact that the payment is unlawful and may be recovered, should not affect it, qua acknowledgment of the continued existence of the debt; it is that, and that alone which revives it, and the unlawfulness of the payment cannot erase that fact.