[No. 11882.  Department Two.  November 16, 1914.]

FRANK A. PAUL, *Respondent*, v. KOHLER & CHASE,
*Appellant.*[1]

ACCORD AND SATISFACTION—RECEIPT ON ACCOUNT—"WITHOUT PREJ-
UDICE"—EVIDENCE—SUFFICIENCY.  Where $500, offered as a payment
in full of a disputed account, was refused, there is no accord and
satisfaction by payment of the sum and passing a receipt for the
amount, "on act." which the debtor refused to accept until "without
prejudice" had been added; the reasonable construction being that
the debtor reserved the right to contest the creditor's claim that pay-
ment was on account only; especially where the debtor's subsequent
letters indicated that the controversy was still unsettled.

LIMITATION OF ACTIONS — ACCRUAL OF OBLIGATION — STARTING OF
LIMITATION.  Under a contract to hold certain of plaintiff's pianos on
sale, and pay for them when sold, the cause of action does not accrue
and the statute of limitations does not begin to run until the pianos
were sold.

SAME—PRESUMPTION—PLEADING AND PROOF.  The courts will not
indulge in any presumptions in favor of the statute of limitations,
and the bar must be clearly pleaded and proven by the preponderance
of the evidence.

SALES—CONTRACTS—TERMS—CONSTRUCTION.  Where an option was
given and accepted to take a certain stock of pianos at list prices
and pay for them as sold, a subsequent agreement to take another
stock on the same terms is controlled by the former agreement as
originally made and not as subsequently modified by a sale in a lump
sum, with discount.

Appeal from a judgment of the superior court for King
county, Mackintosh, J., entered November 29, 1913, upon
findings in favor of the plaintiff, in an action on contract,
tried to the court.  Affirmed.

*Leopold M. Stern* (*J. W. Russell*, of counsel), for ap-
pellant.

*Hastings & Stedman* (*Frank A. Paul, in propria persona*,
of counsel), for respondent.

[1]Reported in 144 Pac. 64.

9—82 WASH.

FULLERTON, J.—In 1904, Clough & Warren, doing busi-ness at Adrian, Michigan, consigned to H. & H. Chesbro, at Seattle, Washington, a number of pianos to be sold on commission. The pianos were listed to the Chesbros at fixed prices, and the profit of the Chesbros was to be the difference between the list price of the pianos and the excess sum at which they should be severally sold. On November 19, 1904, H. & H. Chesbro sold their business to the appellant, Kohler & Chase, a corporation, having its principal place of business at San Francisco. At the time of the sale, H. & H. Chesbro were indebted to Clough & Warren in the sum of $1,050, and had on hand some nine pianos, listed to them at the aggregate price of $1,654.30, of which no disposition had then been made. As a part of the purchase price of the business, Kohler & Chase agreed to pay the indebtedness to Clough & Warren, and to take over and account to that firm for the pianos belonging to it which were then in the hands of the Chesbros. It seems that Clough & Warren had been dealing on similar terms with a certain J. A. Harvey, who resided, and was doing business, in the state of California, and whose business Kohler & Chase had likewise purchased. In this purchase, they also received certain pianos which Clough & Warren had consigned to Harvey to be sold on commission. Learning of the purchases, Clough & Warren wrote Kohler & Chase making inquiry concerning the consigned pianos, and under date of December 5, 1904, received an answer containing the following:

"We are in receipt of your favor of the 31st ult. making inquiries concerning J. A. Harvey's stock. You gave us a list of your pianos and prices with option to pay for them when sold or to pay less cash discount. We concluded to hold them on sale and pay for them when sold. . . . Regarding the Seattle stock, will say that we will take that upon the same condition that we took the Harvey stock, otherwise we would want nothing to do with it. . . ."

The reply to this letter does not appear in the record, although it is agreed that a reply was mailed and received,

and was in substance an acceptance of the proposition. The pianos included in the purchase of the Harvey stock were afterwards settled for by the payment of a fixed sum, amounting to some ten per centum less than the list prices of the pianos. Differences subsequently arose between the parties as to the amount due on the pianos received in the Seattle purchase, and the claim was placed by Clough & Warren in the hands of a San Francisco attorney for collection. During the negotiations between the attorney's representative and Kohler & Chase, $500 was paid on the purchase price and the following receipt given:

"San Francisco, March 15, 1909.
"Received from Kohler & Chase Five hundred dollars on act. without prejudice. H. S. R.       Clough & Warren,
"By H. S. Schaertzer,
$500.00.                                                R."

On October 19, 1912, Clough & Warren assigned the account to the respondent, Frank A. Paul, who began the present action to recover the difference between the list price of the pianos and the amount acknowledged to have been paid thereon by the receipt above set forth. Kohler & Chase set up two affirmative defenses, first, an accord and satisfaction of the account, and second, the statute of limitations of the state of California. The trial court allowed a recovery for the list price of the pianos, less the payment shown by the receipt. From the judgment entered, Kohler & Chase appeal.

At the time of the payment of the money evidenced by the receipt, the appellant's accounts were in a somewhat chaotic condition, owing to the fact that a great part of their account books had been destroyed by fire. H. S. Ripley was acting as the representative of the attorney holding the account, and he spent considerable time with the manager of the appellant endeavoring to adjust the differences. The representative of the attorney was claiming the full amount of the list price of the pianos, while the appellant's manager was contending there was not so much due. Finally the manager offered five

hundred dollars as a payment of the balance due on the account. The representative accepted the money, agreeing to submit the matter to his principals. The representative wrote the receipt above set forth, leaving out the words "without prejudice." The manager declined to accept it as written, wanting a receipt in full. A compromise was then made by the insertion of the words quoted. It is this transaction that is thought to constitute an accord and satisfaction. But we agree with the trial court that it does not justify that conclusion. There was clearly no agreement on the part of Ripley to accept the sum paid as being in full for the debt. Had it been so intended, unquestionably the words "in full" would have been written in the receipt instead of the words used when the manager refused to accept it as originally presented. It is a deduction more satisfactory to our minds that the manager thought the words "on account" would be an admission of a balance due, whereas he wished to be left in a position to contest the question, should the principals claim a balance. That the manager did not understand that the account was finally adjusted by the payment of the five hundred dollars, is also shown by his subsequent letters. Under date of June 4, 1910, less than three months after the payment, he wrote the attorney a letter concerning the matter in which he stated the account between the appellant and Clough & Warren, as he understood it, saying that it was "our earnest desire to have the account straightened and settled as soon as possible." Again, on June 30, 1910, he wrote Clough & Warren, saying that the appellant did not wish to avoid paying what it owed, but first wanted to know that it owed it; and after detailing certain methods that had been adopted by the appellant to ascertain the status of the obligation, used this language: "This method will give us, we hope, complete details that will enable us to establish the balance owing and the amount now accrued and payable, and as far as Seattle is concerned, settle the controversy for all time." Clearly if the appellant's manager had understood that the

controversy had been settled by the transactions surrounding the giving of the receipt, he would not at these times have spoken of it as unsettled.

The second contention is that the right of action is barred by the statute of limitations of the state of California. There is a controversy between the parties respecting the place of contract, and the status of the pleadings respecting the plea of the statute of limitations set forth in the answer. These we shall not consider further than to say that we shall assume that the contract of sale of the pianos was made in the state of California, and that there was no such denial in the reply of the respondent to the plea of the statute as to put the appellant upon its proofs. But in so assuming, we cannot agree with the appellant that there is sufficient in the record to show a bar of the action. It will be remembered that by the contract, as evidenced by the letter of the appellant to the respondent of December 5, 1904, from which we have quoted, and the reply thereto by the respondent, conceded to have been an assent to the terms proposed, the appellant offered to take the stock of pianos in question on the same terms it had consented to take the J. A. Harvey stock; that is to say, it would "hold them on sale and pay for them when sold." An obligation did not, therefore, arise under this contract immediately, so as to set at once the statute of limitations in motion. It could arise only after the pianos were sold, as it was at that time only that the appellant's obligation to pay for them arose. As to when they were sold, there is no proof in the record, further than might arise from the fact that the parties were dealing on that basis at the time the $500 payment was made, namely, March 15, 1909. But the limitation of the statute had not expired between that date and the date of the commencement of the action. While the plea of the statute of limitation is not now regarded by the courts with the disfavor with which it was once regarded, still the courts will not now indulge in any presumptions in its favor. The bar must clearly appear on the face of the complaint, or

it must be clearly pleaded and proven by a preponderance of the evidence that the bar exists, before it will be recognized as a defense to an action.

In reaching the foregoing conclusion, we have not overlooked the appellant's contention to the effect that the sale of the so-called Harvey pianos was made for a lump sum at a discount, and its argument based thereon to the effect that this sale, since it was made on the same conditions, must be held to be a sale for a lump sum with the same discount. But, as we read the record, the facts do not justify this claim. Undoubtedly the pianos received from Harvey were finally sold to the appellant for a lump sum with a discount, but this was not in accordance with the original agreement of the parties. In the letter of Clough & Warren in which the Harvey pianos were listed to the appellant, the appellant was given the option to take them at the list prices and pay for them when sold, or to take them for cash with a discount. But by the letter quoted, appellant accepted the first proposition, and in the same letter offered to take the Seattle stock on the same condition. These terms Clough & Warren accepted. Clearly it was the contract as then accepted which controlled the sale of the Seattle stock, not the Harvey contract as subsequently modified.

Some question is made concerning the sufficiency of the assignment of the account from Clough & Warren to the respondent, and as to the capacity of Clough & Warren to make the assignment. But as to these questions, we think there can be no reasonable cause for doubt, and shall not specially review the proofs thereon.

The judgment is affirmed.

CROW, C. J., MOUNT, PARKER, and MORRIS, JJ., concur.