[No. 23091. Department One. September 2, 1931.]

W. J. HEIN *et al., Appellants,* v. JAS. F. FORNEY, *as Receiver of Gravelle Farmers Elevator Company, et al., Respondents and Cross-appellants.*[1]

[1]Reported in 2 P. (2d) 741.

*Pettijohn & McCallum,* for appellants.

*Danson, Lowe & Danson, Cannon, McKevitt & Fraser,* and *Joseph H. Johnston,* for respondents.

*W. H. Padley,* for receiver.

HOLCOMB, J.—This is a receivership proceeding in which the affairs of Gravelle Farmers Elevator Company, a corporation, are being liquidated in the court below. Appellants are creditors holding the promissory notes of the corporation. The trial court disallowed their claims upon the theory that they were barred by the statute of limitations. Appellants rely upon payments made on the notes by the company on June 12, 1929, to remove the bar of the statute.

Appellants filed their claims with the receiver, who allowed the claims in his final report. Objections were filed by respondents Casper Heldstab and John Schultz to the allowance of those claims. Later, Mrs. McRae, an unsecured creditor with a valid claim, joined in the objection to the allowance of the claims of appellants

which had been made by Heldstab and Schultz. The matter was heard upon the receiver's final report and objections thereto, and the court adjudged that the receiver recover the payments made to appellants and disallow their claims on the ground that they were unlawful preferences.

Respondents Heldstab and Schultz and respondent Mrs. McRae separately asked for an allowance for attorney's fees for their defense in having the claims of appellants rejected over the objection of the receiver. The court refused the petitions of these respondents and they have cross-appealed.

Appellants based their appeal solely upon the findings of fact and conclusions of law made by the lower court. Cross-appellants brought the entire record of facts here, but we think the findings of fact made by the trial court are sufficient to consider upon the principal appeal, as they are based upon practically undisputed testimony, except that the finding as to the receiver's fees and the fees of his attorney was based simply upon the record and the trial court's familiarity therewith. The court made the following findings:

"(1) That the defendant, Gravelle Farmers Elevator Company, is a corporation, organized under and existing by virtue of the laws of the state of Washington. The purpose of the corporation and its business consisted in the operation of a warehouse and the storing, buying and selling of grain.

"(2) In 1928 said corporation leased its warehouse to the Reardan Union Grain Company, a corporation.

"(3) On June 12th, 1929, the assets of said Gravelle Farmers Elevator Co., consisted of its warehouse, which was then of the value of $4,500, also cash on hand in the sum of $2,666.86, together with accounts receivable in the sum of $458.12 which the receiver thereafter collected, making the total cash value of all the assets of the corporation on June 12th, 1929,

the sum of $7,594.72. On said date said corporation was indebted as follows:

"To W. J. Hein on a promissory note in the principal sum of $3,000 with interest from September 21, 1920, at the rate of eight per cent per annum, making a total of $5,100;

"To W. J. Hein on a promissory note in the principal sum of $2,000 with interest from August 1, 1919, at the rate of six per cent per annum, making a total of $3,577.

"To George M. Hein on a promissory note in the principal sum of $750 with interest from November 24th, 1920, at the rate of eight per cent per annum, making a total of $1,261.

"To Mrs. Dave McRae on a promissory note in the principal sum of $3,600 with interest from December 2nd, 1925, at the rate of eight per cent per annum, making a total of $4,647.

"To Farmers State Bank on a promissory note in the principal sum of $4,500 with interest from November 13th, 1928, at the rate of eight per cent per annum making a total of $4,710.

"To Farmers State Bank on a promissory note in the principal sum of $300 with interest from December 22nd, 1928, at the rate of eight per cent per annum, making a total of $311.

"That the total amount of the liabilities of said corporation and as set out above was on June 12, 1929, the sum of $19,606, and the total assets was the sum of $7,594.72, and said corporation was insolvent and had been insolvent for three years prior thereto.

"(4) That said corporation has never adopted any by-laws. That during the entire life of the corporation the following individuals have constituted its board of trustees, to-wit: George M. Hein, W. J. Hein, John Schultz, G. C. Michael and Casper Heldstab.

"(5) On June 12th, 1929, more than six years had elapsed since the dates of maturity of the notes of the corporation held and owned by said trustees, George M. Hein and W. J. Hein, and no payments, neither principal nor interest, had been made upon any of said notes. On June 12th, 1929, the trustees of said

corporation held a meeting, all trustees being present except Casper Heldstab, and at such meeting authorized and directed the payment of $5 on each of the notes held by George M. Hein and W. J. Hein, and on the same day the payments were actually made to the holders of said notes and endorsed on said notes. At said date George Schultz was the general manager of said corporation, and had authority to manage its business and to incur obligations for said corporation and to write checks upon its accounts, and on said day said payments were made by the said George Schultz as such manager and such payments were payments by the corporation.

"(6)   That the trustees of said corporation, before said payments were made, were advised that insolvency proceedings should be deferred for a period of four months, as the payments would be a preference, and that the said trustees took no steps towards commencing insolvency proceedings until December, 1929, for this reason, and that at that time the said trustees consulted W. H. Padley, and it was arranged and agreed that W. J. Hein should commence this suit and ask for the appointment of a receiver, and that said suit was commenced by W. J. Hein a short time later; that the corporation appeared and confessed the prayer of the complaint through its officers and trustees, and the present receiver was thereupon appointed.

"(7)   On the 3d day of February, 1930, Jas. F. Forney was by this court appointed as receiver of said corporation and duly qualified, and ever since has been such receiver. That all of the creditors as shown in paragraph three of these findings duly served and filed their claims and they are the only creditors of said corporation. That all of said claims, including the claims of George M. Hein and W. J. Hein, were approved by the receiver, except the claim of Mrs. Dave McRae, which the receiver approved in the principal sum of $3,000 only. The court finds that in the note of Mrs. Dave McRae the principal amount appears in figures as $3,600 but appears in writing as $3,000, and that a mutual mistake was made by the parties to said

note and the principal sum intended was $3,600 which was the actual consideration for the note, and that the claim of Mrs. Dave McRae for $3,600 and interest should be allowed in full as presented.

"(8) That the receiver has liquidated all of the property of the corporation and has faithfully performed his trust, and has fully accounted to the court. That $500 is a reasonable sum to be allowed the receiver for his services, and $500 is a reasonable sum to be allowed W. H. Padley, attorney for the receiver. That the receiver has on hand available for the payment of his fees and his attorney's fees and filing the decree, and for the payment of creditors, the sum of $7,580.16."

From the foregoing facts, the court concluded that the payments made by the elevator company to appellants on June 12, 1929, constituted unlawful preferences, and therefore did not toll the running of the statute of limitations and are therefore barred. The court further adjudged that the receiver should recover from appellants the three payments of $5 each, received by them on June 12, 1929.

Some other somewhat material facts which may be now noticed are that the notes given by the elevator company referred to in the findings became due, respectively, the $3,000 note to W. J. Hein, six months after date thereof, September 21, 1920; the $2,000 note to W. J. Hein became due twelve months after date, which was August 1, 1919; the $750 note to George M. Hein, became due six months after its date, November 24, 1920. No payments had ever been made on any of the notes by the company until June 12, 1929.

Appellants accept the findings made by the trial court, and on this appeal present but a single question of law which they urge as error.

Appellants argue that the payments were voluntary by the corporation to appellants, and that our statutes relating to limitations upon written instru-

ment contain no exceptions as to the solvency of the corporation at the time of such payments, and that the trust fund doctrine in vogue in this state as to insolvent corporations has no force in such case as this. They rely upon Rem. Comp. Stat., § 177, reading:

"When any payment of principal or interest has been or shall be made upon any existing contract, whether it be a bill of exchange, promissory note, bond or other evidence of indebtedness if such payment be made after the same shall have become due, the limitation shall commence from the time the last payment was made."

It is to be noted that the above statute prescribes that, if such payment be made after the existing contract shall become due, the limitation shall commence from the time the last payment was made. It is then asserted by appellants that the effect of such payment after the barring of the existing contract by the period of limitations is to revive the contract and make it an existing one, citing 17 R. C. L., p. 923, § 285; *Eureka Cedar Lumber & Shingle Co. v. Knack,* 95 Wash. 339, 163 Pac. 753.

It is true that the rule is as laid down in the above case and the text, that, in the case of the written acknowledgment, express recognition of the existing indebtedness and an intention to revive it is shown; while, in the case of part payment, the recognition and intent to revive is an inference the law raises from the part payment. It is conceded, also, that the proper rule is that the statute of limitations, although not an unconscionable defense, is not such a meritorious defense that either the law or the fact should be strained in aid of it. *Paul v. Kohler & Chase,* 82 Wash. 257, 144 Pac. 64.

The insuperable obstacle to the contention and argument of appellants is that the payments were

made under the direction of four trustees, two of whom were directly, pecuniarily interested in the action of the trustees.

It has frequently been held by this court that there is no legal quorum of directors present when action is attempted to be taken on matters as to which one of the directors requisite to make the quorum is interested. *Parsons v. Tacoma Smelting & Refining Co.,* 25 Wash. 492, 65 Pac. 765; *Wonderful Group Mining Co. v. Rand,* 111 Wash. 557, 191 Pac. 631; *Sacajawea Lumber & Shingle Co. v. Skookum Lumber Co.,* 116 Wash. 75, 198 Pac. 1112. Trustees may not vote as trustees upon matters coming before the board in which they have a personal interest, and if a trustee does, the action of the board is voidable and may be set aside at the instance of the corporation, or non-consenting stockholders. *Tefft v. Schaefer,* 136 Wash. 302, 239 Pac. 837, 1119.

It is here to be noted that respondents Heldstab and Schultz, who have always been trustees of the company, are resisting the claims of appellants. Respondent Mrs. McRae, a creditor, had no knowledge whatever of the payments, notice having been withheld from her, and, as is shown by her appearance and objections, has never assented to the revival of appellants' claims by the payments.

It cannot, therefore, be held that the payments made by the corporation on June 12, 1929, were voluntary payments authorized to be made by the corporation.

Appellants assert that George Schultz, who was for some time connected with the elevator company as acting manager, in connection with another grain company which was operating the elevator under a contract with the elevator company, was authorized as such manager to make the payments to appellants.

The payments made by George Schultz, as manager,

were not payments made in the ordinary course of business by a solvent corporation. All the stockholders and trustees knew the corporation was insolvent, and their manager must be presumed to have known it. This is not a case where the creditors innocently received payments from the insolvent corporation, but is a case of a design on the part of the trustees to protect their own interests at the expense of the other creditors. As trustees, such conduct is a breach of that faith to which the law holds fiduciaries, generally.

"The *legal* ownership of the assets of a corporation is not altered by the company's insolvency, and the regular agents of the company would still have the power of representing it, and managing its property, for all authorized purposes. But the equitable interests of the shareholders and creditors are altered by the insolvency; and the directors or managing agents, who originally stood in a fiduciary relation to the company, become placed in a fiduciary relation to its creditors. . . . They cannot secure to themselves any advantage or preference over other creditors, by using their powers as directors for that purpose. These powers are held by them in trust for all the creditors, and cannot be used for their own benefit." 2 Morawetz on Private Corporations (2nd ed.), § 787.

To the same effect is *Taylor v. Mitchell*, 80 Minn. 492, 83 N. W. 418, citing many authorities.

The judgment of the trial court on this phase was right.

Appellants also contend that the court erred in entering judgment for the payments of five dollars each on the three notes held by two appellants. Since our conclusion is that the judgment of the trial court was correct as to the principal appeal, and that the payments to appellants were involuntary and illegal, it must necessarily follow that the payments should be recovered by the receiver from appellants as having been unlawfully paid by the corporation.

The cross-appeals of respondent relate to the allowance of any sum more than $250 each to the receiver and to his attorney, and to the disallowance to respondents of a reasonable attorney's fee for their services in resisting the claims and in continuance of the resistance on this appeal.

The trial court based its rejection of fees to the attorney for respondents upon the proviso of Rem. Comp. Stat., § 474, which provides that attorney's fees shall be left to the agreement of the parties. The trial court was of the opinion that, in the present case, the fund was not created or increased by the litigation.

As to the fees allowed the receiver and his attorney, after examining the record we find that only four claims were presented to the receiver, two of which were allowed without questioning the validity and which the trial court rejected; the claim of Mrs. McRae was disallowed by the receiver, in part, but allowed in full by the trial court. There seems to have been little activity necessary on the part of the receiver and his attorney until the hearing on the final report of the receiver and the objections thereto by respondents. The total net estate of the insolvent company, as found by the court, amounts to $7,580.16. The receiver found $2,666.86 on hand in cash. During the six months elapsing after his appointment, he collected $787.86 in accounts. He sold the one piece of property owned by the company to the grain company for $4,500.

Although loath to disturb allowances made by the trial court and interfere with its discretion in such matters, after considering all of the above facts and the amount of the insolvent estate involved, we conclude that an allowance of $300 each to the receiver and his attorney is just and ample, and that the judgment should be modified to that extent.

■ Regarding allowance of attorney's fees for respondents, in *Drain v. Wilson,* 117 Wash. 34, 200 Pac. 581, we held that counsel fees incurred in necessary litigation will be imposed by equity upon a trust fund for the benefit of which the litigation is successfully maintained, in all cases of good faith on the part of the attorneys rendering the service and of the parties employing them.

Counsel for the receiver contends that this case is distinguished from that, because in that case the result of the action was the creation or augmentation of a fund for which the fund ought to be liable for a reasonable value for such service; while in this case the fund was already in the hands of the receiver, and this litigation in no way enriched the estate. Although the objections and defenses made by respondents did not actually create or augment an estate, it certainly preserved the estate for lawful creditors of the insolvent company. Had it not been for the attempt to divert the estate to their chief benefit by appellants, such proceeding would not have been necessary. They have incurred expense which resulted in benefits to others interested in the estate, and we think should receive some reasonable compensation. After examining the record and considering that respondents joined in the trial of the proceeding, joining their objections and joining in their briefs on appeal, we are of the opinion that $300 should be allowed all the attorneys for all respondents and cross-appellants, as attorney's fees in the matter, to be paid out of the insolvent estate.

Judgment is affirmed on the principal appeal, reversed on the cross-appeal, and remanded with instructions to enter judgment in accordance herewith.

TOLMAN, C. J., PARKER, MITCHELL, and MAIN, JJ., concur.